**Yan Benjamin Wilhelm ASSOUN, Appellant**

**v.**

**Anais Amber GUSTAFSON (a/k/a Anais Amber Assoun) and John Charles Gustafson, Jr., Appellees**

No. 05–14–01463–CV

Court of Appeals of Texas, Dallas.

Opinion Filed May 3, 2016

Rehearing En Banc Overruled June 16, 2016

Michelle May O'Neil, Dallas, TX, for Appellant.

Clint Joseph Westhoff, Plano, TX, Katherine A. Kinser, Lauren Melhart, Jonathan J. Bates, Dallas, TX, David P. Whittlesey, Austin, TX, for Appellees.

Before Justices Myers, Evans, and Whitehill

## OPINION

Opinion by Justice Evans

Appellant Yan Benjamin Wilhelm Assoun ("Yan") appeals the trial court's granting of a summary judgment motion

declaring his former wife and another man are not informally married. Yan also asserts that the trial court abused its discretion by (1) denying Yan the opportunity to conduct discovery prior to the summary judgment hearing and (2) awarding appellate attorney's fees. We conclude Yan did not raise a genuine issue of material fact controverting the traditional motion for summary judgment on the first element of an informal marriage—that the former wife and man with whom she is romantically involved do not have an agreement to be married. We, also, decide the trial court did not abuse its discretion when it denied Yan certain discovery and a continuance, but no evidence supports the award of appellees' appellate attorney's fees. We, therefore, affirm in part and modify in part.

## BACKGROUND

Yan and appellee "Anais Amber Gustafson (a/k/a Anais Amber Assoun)" ("Anais")[1] married in 1995 and had two children. In 1997, Yan and Anais divorced in London, England and a Financial Dispute Resolution Order was rendered by the London court. The order required that Yan pay alimony to Anais in the amount of $132,000 per year until such time as she remarries or until further order from the court. Anais subsequently moved with her two children to Collin County, Texas and began a relationship with appellee John Gustafson ("John"). On December 5, 2013, the London court entered a judgment modifying its previous order and increased the amount of Yan's alimony payments to $380,000 per year.

Anais sought enforcement of Yan's support obligation in New York and then in Texas.

In June 2014, Yan filed a petition against Anais and John with the following claims: (1) a request for declaratory judgment that Anais and John are informally married; (2) common law fraud;[2] and (3) attorney's fees. On August 26, 2014, Anais filed a counterclaim seeking a declaratory judgment that no marriage existed, informal or otherwise, between herself and John. Anais also filed a motion for partial summary judgment seeking summary judgment on the declaratory judgment claim. John filed a joinder in Anais's summary judgment motion in which he adopted and asserted all of Anais's arguments. He also adopted and asserted all of the evidence attached to Anais's motion including, but not limited to, his affidavit.[3]

Following the hearing on September 26, 2014, the trial court granted Anais's and John's motions for partial summary judgment. Yan subsequently nonsuited his other claims and a final judgment was signed on October 16, 2014. Yan then filed this appeal.

## ANALYSIS

### A. The Trial Court Properly Granted Partial Summary Judgment

■ Yan argues that the trial court erred in granting summary judgment in favor of appellees because there is a genuine issue of material fact as to Yan's claim that Anais and John are informally married. We disagree.

---

1. Yan filed the original case using the name "Gustafson" as Anais's last name. In Anais's brief, she notes that she does not use the name "Gustafson" and it is not her last name. There is no evidence in the record that Anais has taken "Gustafson" as her last name.

2. Before the summary judgment hearing, Yan filed an amended petition in which he added a claim against both Anais and John for conspiracy to commit fraud.

3. John attached a copy of his affidavit and the referenced exhibits to his joinder.

### 1. Standard of review

We review the trial court's traditional summary judgment de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). The party moving for summary judgment bears the burden of proof. *Neely v. Wilson,* 418 S.W.3d 52, 59 (Tex.2013). Under Texas Rule of Civil Procedure 166a(c), the moving party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). Further, in reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Id.*

### 2. Analysis

 The Texas Family Code provides that an informal marriage may be proven by evidence that the couple *"agreed to be married* and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." *See* TEX. FAM.CODE ANN. § 2.401(a) (West 2006) (emphasis added). An agreement to be informally married, like any ultimate fact, may be established by direct or circumstantial evidence. *See Russell v. Russell,* 865 S.W.2d 929, 933 (Tex.1993). Evidence of cohabitation and "holding out" in some cases may constitute some evidence of an agreement to be married. *See id.* at 932–33 (citing Joseph W. McKnight, *Family Law; Husband and Wife,* 44 Sw.L.J. 1, 2–3 (1990)). However, it is difficult to infer an agreement to be married from cohabitation in modern society. *See id.* at 932. Thus, evidence of

holding out must be particularly convincing to be probative of an agreement to be married. *See id.* Occasional informal references to another as their spouse will not prove an agreement to be married. *See id.* Circumstantial evidence can entirely fail to overcome direct evidence from both members of the alleged marriage that there is no agreement to be married. *See Clack v. Williams,* 189 S.W.2d 503, 505 (Tex.Civ.App.—San Antonio 1945, writ ref'd w.o.m.) (A marital "agreement can not [sic] be implied contrary to direct evidence which definitely shows that there was no agreement."); *Ferrell v. Celebrezze,* 232 F.Supp. 281, 283 (S.D.Tex.1964) ("The agreement to enter a common law marriage may be implied. Indeed, the required agreement may in some instances be implied from the cohabitation of the parties and their holding out to the public that they are man and wife. But this implication of a marriage contract cannot be drawn where there is direct evidence that the requisite agreement to henceforth be husband and wife was never reached by the parties.") (internal citations omitted); *accord U.S. Fid. & Guar. Co. v. Dowdle,* 269 S.W. 119, 124 (Tex.Civ.App.—Dallas 1924, no writ) ("Courts cannot marry parties by mere presumption without their consent. In the absence of consent, the status of marriage is never created by any government. The law compels no one to assume the matrimonial status. Without assent, no statute or constitution can create this relation.").

In her motion for summary judgment, which John adopted,[4] Anais asserted she disproved as a matter of law that she and John had an agreement to be married—

---

4. Yan did not challenge in the trial court or in his briefs before us John's adoption of Anais's motion for summary judgment, so no issue is presented for our review regarding one party adopting another party's motion for summary judgment. *See generally* TEX.R.APP. P. 33.1, 38.1(i).

the first element of an informal marriage [5]—based on her affidavit and John's affidavit that she attached and incorporated by reference. In her affidavit, Anais stated the following and attached supporting documents:

1. Anais and John do not have and have never had an agreement to be married.

2. Her marriage to Yan was formalized by two wedding ceremonies in two countries "in two religions ... just so all the bases got covered."

3. Anais declared that as demonstrated by the multiple ceremonies of her marriage to Yan, she would not agree to be married without a formal, religious, marriage ceremony and she and John have not had a marriage ceremony in a church, home, courthouse, or privately because they have not agreed to be married.

4. She then testified that after her divorce from Yan she would never marry again without a premarital agreement so that by agreement she could define her marital property rights rather than have a state's laws determine her property rights. Anais further averred she and John do not have a premarital agreement because they have not agreed to be married.

5. Anais incorporated by reference attached documents about which she also testified beginning with a London judgment. She declared that at a five-day hearing in late 2013 at a court in London, one of the issues was her relationship to John. She specifically directed the trial court to ten paragraphs of the attached London judgment. The London judgment indicates Yan sought a reduction of his $132,000 per year obligation to Anais but the court increased it to $380,000 per year. The judgment details Yan's evidence regarding Anais's relationship with John including Yan's employment of a private detective and documentation such as hotel bills, photographs of Anais and John, and material from social media about Anais and John. In the judgment, John is characterized as Anais's boyfriend with whom she has a steady, intimate relationship including international travel together for which John paid the bills, gave her gifts, and allowed her to use one of his cars. The financial determinations in the judgment, including the increase in the amount Yan was required to pay Anais, followed the court's determination that Anais's relationship with John "more likely than not ... will continue." [6] The judgment states Yan was to transfer their ranch in Pottsboro, Texas to Anais but because construction of the ranch house was incomplete Anais moved into her parents' home in Texas in July 2008. The judgment further states Anais later bought the house from her parents.

6. Anais testified her attached automobile insurance application dated 2012

---

5. Anais and John did not challenge the other two elements of an informal marriage: whether they were living together or representing to others that they were married.

6. There are extensive factual findings in the judgment including findings about the credibility of Anais and misrepresentations to the

court by Yan. Also, certain claims asserted by Yan demonstrated a "willingness to oppress the wife through proceedings and undermine her will and resources to pursue her claims for maintenance against him," and that "he has not paid a penny under" certain orders.

is the last such application she has made and she has not changed her marital status with her insurance company since that time. In the attached automobile insurance application, Anais declared her marital status as divorced. She listed her address as her house in Frisco.

7. Anais averred she executed the attached homestead and marital status affidavit in connection with her sale of her house in Frisco in July 2014. In the homestead and marital status affidavit, she declared the house as her homestead and her marital status as "Divorced Single" and that her status had not changed during her ownership of the house.

8. Anais further testified in her affidavit that she attached her 2013 federal income tax form 1040 which she filed as head of household claiming her two children as her dependents and that only a single person could select that category.[7] Anais's attached form 1040 is completed as she stated and lists her address as a property in Pottsboro which the London Judgment stated Yan was to transfer to her. The form indicates signature is under penalties of perjury.

9. Anais further swore she applied for an apartment as a single person. Her rental application for an apartment in Pottsboro is dated June 30, 2014 and contains information about Anais while all requested information in a box labeled "YOUR SPOUSE" is blank. The form contains information about her previous addresses at her home in Frisco and the ranch in Pottsboro. The box at the bottom of the form labeled "EMERGENCY" lists John's name and contact information. "Boyfriend" is the response to a request to specify the relationship.

John's affidavit attached to Anais's motion for summary judgment contains John's testimony that he does not have and has never had an agreement to be married to Anais. He declared he has not had a marriage ceremony with Anais in a church, home, courthouse, or private location. John attached his 2012 tax return which he filed as a single person. John testified when he files his 2013 tax return he intends to file as single.

Anais's motion which John adopted argued that "this case is an instance where circumstantial evidence cannot overcome the direct evidence, which unequivocally negates the possibility of finding an agreement to be married." Her motion argued, "There are no genuine issues of material fact in this case; therefore, the Court may decide the issue of the non-existence of a common law marriage on the summary judgment evidence included in the appendix to this motion, which evidence is incorporated herein by reference." Anais's motion noted that in a case "such as this the agreement can not [sic] be proven and no finding of common law marriage can survive." Specifically, appellees point to their affidavits in which they both testify that they do not have, and have never had, an agreement to be married to each other. Having argued that the evidence negated the existence of an agreement to be married as a matter of law, the burden then shifted to Yan to raise a fact issue on that element of his claim.

---

7. The IRS form 1040 has other filing status options including "Married filing jointly" and "Married filing separately." The form directs to "Check only one box" and Anais checked "Head of household."

In his attempt to create an issue of fact, Yan referenced the same or same types of circumstantial evidence as is described in the London judgment to support his assertion that appellees agreed to be married: (1) appellees are living together; (2) Anais wears a ring on her ring finger; (3) John's children refer to Anais as "stepmom"; and (4) appellees occasionally registered as husband and wife at hotels in foreign countries. Since the existence of an informal marriage is a question of fact that can be proven by circumstantial evidence, Yan argues that summary judgment was precluded by the above-described evidence. *See Russell,* 865 S.W.2d at 933 ("Proof of an agreement to be married may be made by circumstantial evidence or conduct of the parties.").

Here, Anais and John submitted their sworn statements that each does not have, and has never had, an agreement to be married to the other in conjunction with their representations to government agencies made under oath that they were single. Based on this they moved for summary judgment that they were not informally married as a matter of law because they negated the first element of an informal marriage that they had no agreement to be married. The circumstantial evidence of a marriage presented by Yan fails to create a fact issue on the first element of an informal marriage—an agreement to be married—in light of Anais's and John's direct evidence that the parties never agreed to be married and informed government agencies that

each was single.[8] *See Ferrell,* 232 F.Supp. at 283; *see also Clack,* 189 S.W.2d at 505 ("If there be no meeting of the minds, and there certainly was none in this case, there can be no contract, and hence no marriage."). The trial court stated the motion was based on "the affidavits on file ... and on all of the papers and documents filed in support of the motion" and granted Anais's and John's motions for summary judgment after considering the "affidavits submitted, and all other papers and documents filed by the parties...."

Anais's and John's counsel conceded in oral argument that there could be a genuine issue of material fact in some cases even where two people sign affidavits averring they are not married but that the evidence raised by Yan failed to do so in this case. We agree and decide appellees are correct when they argued in the motion for summary judgment, "There are no genuine issues of material fact in this case; therefore, the Court may decide the issue of the non-existence of a common law marriage on the summary judgment evidence included in the appendix to this motion," because "[t]his is an instance where [Yan's] circumstantial evidence cannot overcome the direct evidence, which unequivocally negates the possibility of finding an agreement to be married." We conclude that the trial court properly granted partial, traditional summary judgment on this record, so we resolve the first issue against Yan.

**8.** Yan argues that the affidavits of interested witnesses are not conclusive summary judgment evidence. Yan cites *Reilly v. Jacobs,* 536 S.W.2d 406, 408 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.) in support of the proposition that conflicting evidence regarding the existence of an informal marriage will go to the credibility of the witnesses and the weight of the evidence presented. *Reilly* involves a factual situation where one party to the al-

leged informal marriage was deceased and the surviving party and the heirs of the deceased differed in opinion as to the existence of an informal marriage. *Id.* at 406–07. Here, however, both parties to the purported informal marriage deny the existence of a marriage and it is a third party who seeks a declaration that they married contrary to their agreement.

## B. The Trial Court Properly Denied Discovery

 Yan asserts that the trial court abused its discretion by denying him the opportunity to conduct discovery prior to the hearing on his motion for summary judgment. We disagree.

### 1. Standard of review

 The trial court may order a continuance of a summary judgment hearing if it appears from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition. *See* Tex.R. Civ. P. 166a(g); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex.2004). The affidavit must explain why the continuance is necessary; conclusory allegations are insufficient. *Doe v. Roman Catholic Archdiocese of Galveston–Houston*, 362 S.W.3d 803, 809 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *Two Thirty Nine Joint Venture*, 145 S.W.3d at 161. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

### 2. Additional facts

In early August 2014, Yan filed three notices of intent to issue subpoenas for documents and tangible things to three non-parties—Kelleher International, LLC, J.T. Thomas Builders, Inc., and Starfire Equestrian Center, Inc. The subpoenas requested numerous documents including, but not limited to, invoices and billing statements, telephone records, interoffice documents, and correspondence with appellees from January 1, 2010.

On August 21, 2014, Anais filed a motion to quash the subpoenas and requested a protective order. Anais asserted that the third-party document requests were overbroad and "not likely to lead to the discovery of evidence" relevant to the matters at issue.

On August 26, 2014, the trial court held a hearing on Anais's motion to quash and request for a protective order. Although the hearing was conducted to address the third-party subpoenas, the trial court extended the hearing beyond that motion to generally address the discovery parameters in this case.[9] Anais's counsel explained to the court that discovery had already been conducted in connection with a five-day trial held in London in November 2013. During that trial, the parties litigated the issue of Anais and John's relationship because Yan argued that he should be entitled to pay Anais less alimony since John was paying some of her expenses and they were essentially acting as a married couple. Anais's attorney argued that no discovery was necessary in this case because no amount of documentation can overcome the fact that a government cannot impose a marriage on two people who have agreed to be unmarried, and that a summary judgment motion would be filed with this same argument. Yan's attorney argued that Yan was entitled to discovery because Anais and John are cohabitating and holding themselves out as married and the documents would

---

9. For example, the trial court asked whether there had been any previous discovery on issues such as government documents, health insurance, or taxes. The trial court specifically asked Yan's counsel whether there were

"any documents that have already been produced that indicate that either Mr. Gustafson or Ms. Assoun have represented to a governmental entity that they are married."

help establish this argument. The court then noted:

> Trial court: So my concern is: If you truly want a summary judgment—and this is an issue that has never been ruled upon by a court that has at least been reflected in case law—then doesn't it help you on the inevitable appeal that you have some discovery out there?
>
> [Anais's attorney]: I think tax returns, health insurance forms, the things we traditionally look at, since November of 2013, that it might help on an appeal.

After hearing additional argument from both sides, the following exchange took place:

> Trial court: I am going to order the production of the 2013 tax returns by both—well, I guess this is just Anais Assoun's motion to quash and protective order. And then any health insurance forms. I can't think of any other governmental documents that would require disclosing husband or wife.
>
> [Yan's attorney]: We're also going to be seeking car insurance forms.
>
> Trial court: All right. Car insurance forms and homeowners insurance, if that's something where you also hold yourself out as husband and wife. It's not really a governmental entity, though, it's a private insurance.
>
> [Anais's attorney]: Is that all, again, since 2013?
>
> Trial court: Yes, since November of 2013.

---

10. The record reflects the trial court did not actually sign the discovery order until after the September 26, 2014 summary judgment hearing and order granting partial summary judgment. No complaint has been raised on

> [Yan's attorney]: Your Honor, would it be possible to go back to 2010 on these issues, because we believe that's when she started—
>
> Trial court: No. There was a five-day trial in England, so—
>
> \* \* \*
>
> [Yan's attorney]: We've covered those issues, but what about the subpoenas that have been issued, Your Honor?
>
> [Anais's attorney]: These are all to third parties. None of them would have a tax return, health insurance application, car insurance or homeowners insurance.
>
> Trial court: Okay. I'll quash those.
>
> [Yan's attorney]: Again—Your Honor, so am I to understand from the Court that pretty much any further discovery besides what has been authorized today is void?
>
> Trial court: Until after the summary judgment hearing, which has been set for—
>
> [Anais's attorney]: September 26. And we will—we'll voluntarily produce all of those documents right away.
>
> Trial court: Okay.

By its discovery order dated November 12, 2014,[10] the trial court clarified the document production:

> 4) Further discovery in this case is limited to the following documents ("Limited Discovery Documents") in the actual or constructive possession of Defendant ANAIS AMBER ASSOUN pending the outcome of the Motion for Partial Summary Judgment set for September 26, 2014:
>
> a. 2013 federal income tax returns;

appeal, however, that Anais failed to comply with the trial court's oral pronouncement of its discovery rulings by producing the documents timely after the discovery hearing and before the summary judgment hearing.

b. Post–November 2013 health insurance policies and applications;

c. Post–November 2013 automobile insurance policies and applications; and

d. Post–November 2013 homeowner's insurance policies and applications.

5) Defendant ANAIS AMBER AS- SOUN shall produce the aforementioned Limited Discovery Documents immediately.

IT IS ORDERED that any discovery other than the limited discovery documents ordered herein is void pending the September 26, 2014 summary judgment hearing and no further discovery shall be conducted until the Court rules on the summary judgment:

In Yan's response to appellees' motion for partial summary judgment, Yan again re-asserted his argument that he was denied the right to conduct discovery:

> Additionally, summary judgment in this case is inappropriate [sic] has been denied the ability to conduct discovery in this case. On or about August 26, 2014, the Court quashed all of MR. AS- SOUN's then-outstanding subpoenas and stayed all discovery in the case pending the outcome of the summary judgment hearing on September 26, 2014. However, the Court did order Defendants to produce an extremely limited amount of information. As such, MR. ASSOUN has not been able to conduct any meaningful discovery in this case to gather information and evidence to support his claims.

### 3. Analysis

In this case, the trial court quashed the third-party subpoenas to Kelleher International, LLC, J.T. Thomas Builders, Inc., and Starfire Equestrian Center, Inc.[11] Yan asserts that this discovery was "essential to his ability to prove an agreement of [John] and [Anais] to be married and to contradict their self-serving affidavits denying the existence of a marriage" and that the trial court abused its discretion by limiting the discovery before determining summary judgment.[12] We disagree.

Yan has failed to explain, either at the hearing on the protective order or in his briefing, why the additional discovery was necessary. At the hearing, Yan's counsel argued that "with the scope of the issues here and the fact that Anais has gone to great lengths that are obvious to us at this point without even getting into discovery yet, to be deceptive and avoid exposing what we believe is her marriage to [John], that is why the discovery is necessary." In his brief, Yan argues that the "discovery diligently sought by [Yan] and denied by the trial court was essential to his ability to prove an agreement of [John] and [Anais] to be married and to controvert their self-serving affidavits denying the existence of a marriage that ANAIS offered in favor of her summary judgment action." Yan merely argues that when the trial court quashed the three third-party subpoenas that he was deprived of essential evidence relating to the alleged marital relationship between Anais and John. Yan,

---

**11.** Yan asserts that Kelleher International, LLC is an international matchmaking company. Anais's attorney noted that J.T. Thomas Builders, Inc., was Anais's home builder. The record and the briefing do not reflect the relation of Starfire Equestrian Center, Inc. to either Anais or John.

**12.** Although Yan did not file an affidavit asserting facts that would entitle him to seek a continuance until discovery could be completed prior to summary judgment, it is clear that the trial court heard oral argument on this issue at the hearing on the protective order. Accordingly, we review the trial court's decision to limit discovery under the same standard of review.

however, fails to allege any reason—at either the hearing or in his briefing—why these three non-party subpoenas would provide essential information to his case. As stated above, conclusory allegations are insufficient to warrant a continuance. *See Roman Catholic Archdiocese of Galveston–Houston,* 362 S.W.3d at 809. Further, the trial court itself noted that it ordered production of tax returns and health insurance forms because they involved governmental entities. The court allowed production of the car insurance forms but noted that "[i]t's not really a governmental entity, though, it's a private insurance." As such, it appears that the trial court ordered the production of documents which could be considered more official than the third-party documents which Yan requested. Further, as Yan himself could not document any particular reason for the production of additional documents, we disagree that the trial court abused its discretion in limiting the discovery and we resolve the second issue against Yan.[13]

## C. The Trial Court Improperly Awarded Appellate Attorney's Fees

■ Yan asserts that the trial court abused its discretion by awarding appellate attorney's fees without sufficient evidence. We agree.

### 1. Standard of review

■ The amount of an attorney's fees award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of an abuse of that discretion. *Keith v. Keith,* 221 S.W.3d 156, 169 (Tex.App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Id.*

### 2. Additional facts

On October 16, 2014, the trial court held a prove-up hearing regarding Anais's request for attorney's fees. Clint Westhoff, former counsel for Anais, testified at the hearing about what attorney's fees had been incurred and the reasonableness of the fees. Westhoff requested a judgment for the full amount of fees ($24,951.36) in addition to conditional attorney's fees.[14] Yan's attorney noted during the hearing that he had stipulated that John's attorney's fees were reasonable and necessary, but that he disagreed that either John or Anais should be awarded fees.[15] At the conclusion of the hearing, the trial court awarded attorney's fees for Anais in the amount of $24,951.36 and attorney's fees for John in the amount of $1,000.

In the final judgment dated October 16, 2014, the trial court awarded Anais incurred attorney's fees in the amount of $24,951.36 as well as a conditional judgment of $22,500 against Yan for attorney's

---

13. Yan also argues that the denial of discovery by the trial court in this case has had a "grave impact" on his ability to present defenses in a concurrently-pending contempt case in Collin County. As Yan failed to cite any authority for the proposition that a trial court must consider the impact of its discovery decisions on litigation pending in other courts, we decline to address this argument. *See* Tex.R.App. P. 38.1.

14. Aside from the request for conditional attorney's fees, there was no testimony about

the reasonableness of the amount requested for appellate attorney's fees.

15. The reporter's record reflects the parties agreed to a written stipulation regarding attorney's fees that they filed with the court. A stipulation is noted on the clerk's docket sheet but is not included in the clerk's record. Neither party argues that Anais's and John's appellate attorney's fees were included in the stipulation.

fees on appeal. In addition, the trial court awarded John incurred attorney's fees in the amount of $1,000 as well as a conditional judgment of $2,500 against Yan for attorney's fees on appeal.

### 3. Analysis

As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *Keith*, 221 S.W.3d at 169. The trial court's award of attorney's fees may include appellate attorney's fees. *Id.* However, there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees. *Id.* Factors to be considered in reviewing the reasonableness of the attorney's fees include the difficulties in the nature of the case; the amount of money involved; the time devoted by the attorney to the case; and the attorney's experience and skill in presenting the case. *Id.*

Here, Westhoff testified about the reasonableness of the amount of attorney's fees which had already been incurred, but did not provide any evidence as to the reasonableness of the fees pertaining to the appellate work. The testimony should have included an opinion of what a reasonable attorney's fee would be for the services that would be necessary in the event of an appeal. *State & Cnty. Mut. Fire Ins. Co.*, 228 S.W.3d 404, 408 (Tex.App.—Fort Worth 2007, no pet.). As there was no evidence to support the conditional award of appellees' reasonable appellate attorney's fees, we sustain Yan's third issue.

### CONCLUSION

We affirm the trial court's judgment granting summary judgment declaring that Anais Amber Assoun and John Charles Gustafson, Jr. are not married and the trial court's order limiting Yan's opportunity to conduct discovery prior to the summary judgment hearing. We modify the trial court's judgment to delete the portion granting appellees conditional appellate attorney's fees. As modified, we affirm the judgment of the trial court.

Whitehill, J., dissenting

Dissenting Opinion by Justice Whitehill

Appellant sued appellees for a declaration that appellees are informally married to each other—a decree that would allow appellant Yan to argue elsewhere that he no longer has to pay appellee Anais $380,000 a year in alimony. Appellees prevailed on summary judgment solely on the ground that as a matter of law their sworn denials of an agreement to be married could not be effectively controverted by any amount of contrary circumstantial evidence. The dispositive issue in this appeal is whether appellees' premise is correct.

The majority's opinion agrees with appellant on the only issue properly before us but decides the case on a different issue not before us: Although circumstantial evidence of an agreement to be married might in some cases suffice to raise a genuine fact issue despite the putative spouses' sworn denials, is appellant's particular circumstantial evidence insufficient to raise a fact issue regarding whether Anais and John made such an agreement in this case?

I respectfully dissent and, for the reasons discussed below, would reverse and remand this case of first impression on the issue presented to the trial court for further proceedings because:

One, the only summary judgment ground appellees asserted in the trial court and thus preserved for appellate purposes is whether any amount of circumstantial evidence can ever raise a genuine fact issue on the agreement to be married ele-

ment of an informal marriage if both putative spouses deny that they so agreed.

Two, the preceding ground is both inconsistent with family code § 2.401's plain text and contrary to the supreme court's unqualified holding in *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex.1993), that, like any other fact question, the required agreement to be married can be proved by circumstantial evidence.

Three, the cases appellees rely on to support their argument are factually distinguishable and do not apply here because they involve circumstances in which either the evidence unequivocally established a legal impediment to the formation of an informal marriage or the claimant's own evidence disproved her claim. Whereas neither circumstance exists in this case.

Four, even if whether appellees' evidence otherwise conclusively negated the existence of an agreement to be married were properly before us, appellant's circumstantial evidence was more than a scintilla of evidence that raised a genuine fact issue as to whether appellees agreed to be married under even the heightened standards this Court applies for proving an agreement to be married.

## I. Background

Appellant Yan and appellee Anais were divorced in England. By English court order, Yan must pay Anais $380,000 per year in alimony—unless Anais remarries. If she does, Yan owes her no more alimony.

Anais moved to Texas and began a romantic relationship with appellee John—a relationship their own evidence confirms "more likely than not ... will continue." Accepting as true the evidence appellant submitted in response to appellees' summary judgment motion—and drawing all reasonable inferences from that evidence

in Yan's favor—the following has happened since Anais and John began their romantic relationship:

(1) Anais sold her home and moved with her two children into John's home with him and his two children.

(2) Around the time Anais sold her home and moved into John's home, her attorney falsely informed appellant that Anais and the children were permanently residing at an address in Pottsboro, Texas that was actually an uninhabitable construction site.

(3) John and Anais created an environment among themselves and with their children such that at least one child on social media refers to the group as step parents and step siblings.

(4) Appellees appear together at society functions with Anais wearing what appears to be a wedding ring.

(5) Appellees allow media to publish pictures of appellees as a couple at those functions with Anais's ring being displayed in those photographs.

(6) Appellees travel together as a couple, registering in hotels and paying their related bills as married Mr. and Mrs. Gustafson (John's last name).

Texas law recognizes informal marriages if there is proof that (i) the putative spouses agreed to be married; (ii) after making that agreement, they lived in Texas as married to each other; and (iii) they represented to others while in Texas that they were married to each other. Tex. Fam. Code § 2.401. A party may prove these elements by circumstantial evidence. *Russell,* 865 S.W.2d at 933.

In the present case, appellees' summary judgment motions focused solely on the agreement to be married element. That is, their motions did not challenge the living together as husband and wife or the

representing to others that they are married elements. Nor did they argue that appellant's evidence would have been insufficient to survive summary judgment had it been offered in a dispute by one putative spouse in a suit against the other putative spouse. Nor did they contend, and their evidence does not suggest, that any legal impediment (such as, one of them was still legally married to someone else) prohibited them from creating an agreement to be married if they wanted to make that agreement.

Appellees instead presented their affidavits denying that they ever presently agreed to be married and asserting that their long-held religious beliefs prevented them from forming an informal marriage. Although appellees' affidavits swore to other facts, all such additional alleged facts were offered to support their general argument that they would not and did not in fact agree to be married. They then argued that, as a matter of law, no amount of circumstantial evidence from appellant could ever possibly raise a fact issue on the agreement to be married issue given their affidavits. To that end, they argued that no government or third party could ever force them to be married if they swore that they never agreed to be married.

The trial court agreed with appellees, and appellant timely appealed.

## II. What was the summary judgment ground presented in appellees' motions?

Appellees' summary judgment motions argued that they were entitled to summary judgment because their affidavit testimony directly denied the existence of an agreement to be married and "no amount of circumstantial evidence can overcome that direct evidence." That is, the "because" of appellees' motion was the legal premise that an agreement to be married can never

be shown with circumstantial evidence if the two parties to the putative informal marriage deny that they ever agreed to be married.

Specifically, appellees' summary judgment motion argued:

Texas law does not recognize the concept of an involuntary marriage, which is essentially what Plaintiff's position would demand. No one can be forced into a marital agreement. To do so would be to force, by legislative edict and Court declarations, individuals into marital status and property rights they may not want. It would also force them into personal relationships that may be against their own moral or religious conviction. The Court, and therefore the government, simply has no authority to do this.

Even if an involuntary marriage was somehow possible under the law, Texas case law interpreting the informal marriage statu[t]es recognizes that direct evidence, which negates an agreement to be married, prevents a finding of an informal marriage as a matter of law. In this case, both parties to the alleged marriage have sworn they do not have, and have not had, a present agreement to be married. There can be no more direct evidence of a two-party agreement than the testimony of both parties to the alleged agreement. Without the present agreement of Anais Assoun and John Gustafson, Jr. to be presently married, any claim of an informal marriage by a third-party has to fail as a matter of law. *No amount of evidence of cohabitation or holding-out can create a marriage agreement between two unwilling parties.*

(Emphasis added.)

Moreover, appellees did not argue in the trial court that appellant's summary judgment evidence would not create a fact

issue regarding the required agreement to be married had either (i) the same evidence been presented in a dispute between one putative spouse against the putative other spouse or (ii) appellees filed a no-evidence summary judgment motion. Nor did appellees argue that some legal impediment existed that prevented them from effecting a valid agreement to be informally married.

To the contrary, at the summary judgment hearing, appellees' counsel told the trial judge that appellees' objections to appellant's evidence "don't really matter" because "even in the face of direct evidence of cohabitation and holding out, the evidence can be conclusive in some situations that there is no agreement to be married." Appellees further argued that one such situation is when both parties to the alleged informal marriage testify that they never had such an agreement.

Consistent with the above trial court positions, appellees' appellate brief also limits their argument to the premise that, as a matter of law, no amount of a third party's circumstantial evidence could ever raise a fact issue regarding whether putative spouses agreed among themselves to be informally married if they both denied making that agreement:

- This case is an instance where circumstantial evidence cannot overcome the direct evidence, which unequivocally negates the possibility of finding an agreement to be married. In a case such as this the agreement cannot be proven and no finding of a common law marriage can survive.
- If the direct evidence negates the possibility of consent, then no amount of circumstantial evidence can be used to imply, infer, or otherwise artificially create consent where none exists.
- When, as in this case, the two parties to the alleged marriage both testify,

under oath, clearly and unequivocally, that there is no, has been none, and will be no agreement to be informally married, no amount of circumstantial evidence can overcome that direct evidence.

Additionally, at oral argument, appellees' counsel agreed that the summary judgment motions argued that "no amount of circumstantial evidence, no matter what it is, could possibly overcome their affidavits." And she agreed that "the only issue before this Court at this point in time is the pure legal question of whether, given these two people's affidavits, any amount of circumstantial evidence could ever overcome their statements."

Consequently, the only summary judgment ground properly before us regarding the putative informal marriage in this case is whether a third party who is not a successor in interest to one of the putative spouses and who would benefit by the existence of an informal marriage can ever possibly prove with circumstantial evidence the existence of the required agreement to be married over the putative spouses' denials that they had such an agreement? This appears to be a question of first impression in Texas.

### III. Are appellees correct that no amount of circumstantial evidence can overcome their denials that they ever agreed to be married?

#### A. What does the applicable statute say about the issue?

Family code § 2.401, captioned "Proof of Informal Marriage," provides that an informal marriage may be proved by evidence that the putative spouses agreed to be married and that, after that agreement, they lived together in Texas as husband and wife and there represented to others that they are married:

In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that: ... (2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

TEX. FAM.CODE § 2.401(a)(2). That is it.

We are to apply statutes according to their plain text, if possible. *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex.2015) ("[W]e initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent, unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results.") (citation omitted).

Here, § 2.401's plain text resolves the sole legal issue before us. The plain text does not limit who can attempt to prove the alleged informal marriage. Nor does the plain text exclude cases in which the putative spouses deny that they agreed to be married. Accordingly, the governing statute provides no basis for concluding that appellees' denials of the fact by themselves mean that no amount of circumstantial evidence can raise a fact issue regarding whether they actually agreed to be married.

Appellees' impossibility premise essentially adds the words "as between the spouses" to the informal-marriage statute. But our constitutional role is to apply the statute as plainly written if possible:

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. *They are not responsible for omissions in legislation.* They are responsible for a true and fair interpretation of the written law.

*Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920) (emphasis added).

The legislature did not bar adversely affected third parties from proving an informal marriage through circumstantial evidence, even in the face of denials by the putative spouses. Because the legislature did not write that limit into the statute, we cannot read it there.

**B. What does the case law say about whether one can prove with circumstantial evidence an agreement to be informally married?**

It is settled that "[a]ny ultimate fact may be proved by circumstantial evidence." *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex.1993); *accord Aland v. Martin*, 271 S.W.3d 424, 429 (Tex.App.—Dallas 2008, no pet.). Indeed, *Russell* was an informal marriage case, and the supreme court held that the claimant could prove the required interspousal agreement with circumstantial evidence. 865 S.W.2d at 933. *Russell* specifically holds that the family code "does not require direct evidence of an agreement to be married in order to establish a common law marriage[. T]he agreement may be proved by circumstantial evidence." *Id.*

In this regard, *Russell* comports with established precedent in a variety of other contexts holding that questions of intent or agreement can be proved with circumstantial evidence. *See, e.g., In re Lipsky*, 460 S.W.3d 579, 588 (Tex.2015) (orig.proceeding) (intent to defraud "invariably must be proven by circumstantial evidence"); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (intent to deliver a controlled substance can be proved by circumstantial evidence); *Walker v. State*,

828 S.W.2d 485, 487 (Tex.App.—Dallas 1992, pet. ref'd) (criminal conspiracy: "The agreement may be shown by circumstantial evidence."); *Freeman v. Greenbriar Homes, Inc.*, 715 S.W.2d 394, 397 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (DTPA: "In the usual case, intent must be shown by circumstantial evidence.").

### C. What about the cases on which appellees rely?

Appellees cited no case holding that there is an exception to *Russell* when the two putative spouses deny that they agreed to be married. They (and the majority) instead rely on several cases in which a putative spouse or his or her successor in interest attempted to prove the required agreement despite his or her own direct evidence negating the possible existence of that agreement. As discussed below, however, the cases the majority cites are distinguishable and inapplicable.

### 1. Clack v. Williams

In *Clack v. Williams,* a husband was divorced by his wife, who later made a will devising all her property to other relatives. 189 S.W.2d 503, 504 (Tex.Civ.App.—San Antonio 1945, writ ref'd w.o.m.). After she died, the ex-husband attempted to assert homestead rights in their house by way of common-law marriage, claiming that he never knew about the divorce and that he and his ex-wife had lived together in the house as husband and wife until her death. *Id.*

The court of civil appeals, however, held that his common-law marriage claim failed as a matter of law because his own testimony conclusively showed that he did not know they were divorced. *Id.* The court said that "an agreement [to be married] can not be implied contrary to direct evidence which definitely shows that there was no such agreement." *Id.* at 505. But the case did not involve two putative spouses denying the existence of an agreement to the detriment of a third party—it involved a single surviving person who claimed to be in a common-law marriage but testified to facts disproving even the possibility of such an agreement. That is, the husband could not have agreed to begin a new common-law marriage because he never knew that his existing marriage had ended until after his wife died. The case before us is different. Although Anais and John have denied the existence of an informal marriage, Yan—the party seeking to prove the marriage's existence—has not.

Furthermore, although Anais and John claim long-held religious beliefs as to why they would not agree to an informal marriage, they do not proffer any legal impediment that would prevent them from doing so if they so desired. In fact, the record affirmatively shows that both are legally divorced and there is no evidence that either is married to an unnamed person.

### 2. United States Fidelity & Guaranty Co. v. Dowdle

Similarly, in *United States Fidelity & Guaranty Co. v. Dowdle*, a jury found that Mary Dowdle was the common-law wife of Lucius Dowdle, deceased. 269 S.W. 119, 120 (Tex.Civ.App.—Dallas 1924, no writ). We reversed, holding that (i) the evidence conclusively established that Lucius was married to another woman when the purported common-law marriage with Mary began and (ii) there was no evidence that Lucius and Mary ever agreed to be married after Lucius's prior marriage was terminated by divorce. *Id.* at 121–22.

Our further opinion overruling Mary's motion for rehearing contains the passage quoted by the majority, beginning, "Courts cannot marry parties by mere presumption without their consent." *Id.* at 124. But,

as discussed further below, Yan is not attempting to impose marriage on Anais and John without their consent; he is attempting to prove that they have in fact consented, notwithstanding their current denials.

In any event, *Dowdle*'s holding is that the putative wife introduced no evidence that an agreement to be married occurred when her putative husband was legally free to marry. It thus does not support the premise that a couple's denials of an agreement to be married will as a matter of law overcome any and all contrary circumstantial evidence when offered by an affected third party.

### 3. Ferrell v. Celebrezze

*Ferrell v. Celebrezze*, 232 F.Supp. 281 (S.D.Tex.1964), is also distinguishable. In that case, Lelia Ferrell sought social-security death benefits after Clyde Ferrell died. *Id.* at 282. At the administrative hearing on her claim, it was shown that Lelia divorced Clyde in 1951 but they continued to live on the same property and even in the same house until he died in 1960. *Id.* At the administrative hearing, Lelia testified that, although Clyde suggested remarriage, she did not consent to it. *Id.* Not surprisingly, Lelia's administrative claim to be Clyde's surviving spouse failed, and the federal district court denied her petition to review the decision because substantial evidence supported the denial of her claim. *Id.* at 282–83. The court cited *Clack* and other cases for the point that the "implication of a marriage contract cannot be drawn where there is direct evidence that the requisite agreement to henceforth be husband and wife was never reached by the parties." *Id.* at 283. Like *Clack*, *Ferrell* involved a party who claimed to have been in a common-law marriage but simultaneously swore to facts

negating such a marriage. As explained above, the present case is distinguishable.

Accordingly, this Court should hold that appellees' sole summary judgment ground rests on an incorrect legal premise about their affidavits' effect. We therefore should reverse the judgment on this basis alone and go no further.

### IV. Would "the government" or this Court be imposing a marriage on appellees?

Appellees argue that reversing their summary judgment could lead to the State's imposing marriage on people who never agreed to be married. But would "the government" really be imposing marriage on unwilling participants? Or, would the possible result be only that a jury heard all of the evidence, assessed the witness's credibility, and held appellees accountable for their own voluntary conduct?

Furthermore, Texans trust factfinders to decide whether parties made an agreement all the time. *See, e.g., Texas Pattern Jury Charges: Business · Consumer · Insurance · Employment* 101.1 (2014) ("Basic [Contract] Question—Existence"). Juries and judges can find the existence of an agreement, even beyond a reasonable doubt, using nothing but circumstantial evidence. *See Hamilton v. State*, 399 S.W.3d 673, 680 (Tex.App.—Amarillo 2013, pet. ref'd) ("Since direct evidence of intent is rarely available, the existence of a conspiracy can be proven through circumstantial evidence.").

Finally, there is nothing remarkable about allowing a factfinder to find a fact based on circumstantial evidence even if one or more interested parties deny that the fact is true. *See, e.g., In re Lipsky*, 460 S.W.3d at 588 (intent to defraud "invariably must be proven by circumstantial evidence"); *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex.1991) ("Any ultimate fact

may be proved by circumstantial evidence."); *Walker*, 828 S.W.2d at 487 (for conspiracy, essential element of agreement may be proven by circumstantial evidence).

## V. Was appellant's evidence otherwise more than a scintilla of evidence that appellees had agreed to be married?

### A. We should not decide this issue.

As shown in Part II above, the only summary judgment ground appellees preserved is whether their sworn denials of an agreement to be married are de jure conclusive so that no amount of contrary circumstantial evidence can raise a genuine fact issue. Thus, no other grounds may be considered as grounds for affirmance. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex.2010) ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) ("A motion must stand or fall on the grounds expressly presented in the motion."); *see also Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 923 (Tex.App.—Dallas 2009, no pet.) ("The term 'grounds' means the reasons that entitle the movant to summary judgment, in other words, 'why' the movant should be granted summary judgment."). Appellees' sole summary judgment ground fails as a matter of law, so we should reverse and stop here.

### B. But if we decide this issue, we should still reverse.

When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). We must take evidence favorable to the nonmovant as true, and we must

indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994). When we review a summary judgment for a plaintiff, we decide whether the plaintiff established every element of its claim as a matter of law. *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex.App.—Dallas 2012, no pet.). We consider the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in the nonmovant's favor, and resolve any doubts against the movant. *Id.*

In light of *Russell*'s discussion of the 1989 legislative changes to the family code requirements for proving an informal marriage, *see* 865 S.W.2d at 931–32, some Texas courts, including this one, have held that "agreed to be married" in this context means that "the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex.App.—Houston [1st Dist.] 2001, pet. denied); *accord In re Estate of Marek*, No. 05–13–01008–CV, 2014 WL 3057479, at *5 (Tex.App.—Dallas July 7, 2014, no pet.) (mem. op.).

This definition includes at least three defining features of a marriage agreement: the agreement must be (i) present and include an intent to be (ii) immediately and (iii) permanently married. Thus, courts have sometimes contrasted the intent to create "an immediate and permanent marriage relationship" with an intent to create "merely a temporary cohabitation." *In re C.M.V.*, 479 S.W.3d 352, 360 (Tex.App.—El Paso 2015, no pet.). Proof of cohabitation and representations to others that the couple is married, however, may nonetheless be circumstantial evidence of the required agreement to be married. *Russell*, 865 S.W.2d at 933; *In re Estate of Marek*, 2014 WL 3057479, at *5.

Here, appellant Yan adduced more than a scintilla of evidence that appellees agreed to be married. Specifically, he presented evidence showing the following:

- Anais and John met through an "international marriage matchmaking company."
- Anais sold her house and she and her children with Yan moved into John's house with John and his children.
- Anais represented that she and her children were living in Pottsboro, Texas at what was actually an uninhabitable construction site.
- Appellees attend social events together and have had their picture taken at these events and published in various places. Appellant presented pictures in which Anais is wearing what appears to be a wedding band on her wedding ring finger. But she removes the ring when she appears in court in New York, Texas, and London.
- Additionally, a private investigator saw John, Anais, and two of Anais's children together at an event in Dallas and at which Anais was wearing a ring on the ring finger of her left hand.
- Anais and John have stayed together in hotels registered as "Mr. & Mrs. John Gustafson" and "Mr. & Mrs. John and Anais Gustafson." Another hotel had a record of a stay by "Ms. Anais Gustafson."
- John's 16–year–old daughter has, in social media, referred to Anais as her "stepmom," referred to Anais and Yan's daughter as her "stepsister," and referred to Anais and Yan's son as her "brother." She has also referred to her "stepfamily" in social media.
- Finally, John and Anais have a substantial financial incentive to deny their agreement to be married.

This array of circumstantial evidence is, when viewed collectively and under the applicable standards of review, more than a scintilla of evidence raising a genuine fact issue regarding whether appellees agreed to be married. For example, there is evidence that they and their children are cohabiting in John's house and that this arrangement "more likely than not . . . will continue." There is also evidence that they have held themselves out as married in the form of Anais's wearing of a ring on her left ring finger at public events, not only with John but also in the presence of Anais and Yan's children, while removing the ring for court appearances. And there is evidence that at least John's teenaged daughter publicly refers to Anais and her children as her "stepfamily."

Taking the evidence as a whole, a reasonable factfinder could find that appellees have done more than agree to a temporary cohabitation arrangement. Rather, a reasonable factfinder could find that they have fused their separate families into a single family unit. A reasonable factfinder could also infer that John and Anais would not give their children a new family under one roof unless they had in fact agreed to an immediate and permanent union. For us to conclude otherwise on this record would be error.

The majority, however, by reciting in depth John and Anais's summary judgment evidence (which includes post-hoc denials and rationalizations but no evidence of a legal impediment to their being married) and giving scant notice to Yan's opposing evidence, weighs the evidence instead of addressing whether Yan's evidence standing alone presents more than a scintilla of evidence from which a jury—after assessing the witness's credibility—could find that Anais and John agreed among themselves to be married.

Since Anais and John did not attempt to prove a legal impediment to their marriage, another way to approach this issue

(if it were properly before us) would be as though Anais and John had presented their "no agreement" argument in a no-evidence motion. *Cf. Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex.App.—Dallas 2007, pet. denied) (considering no-evidence summary judgment grounds before traditional grounds). In that instance, Yan's evidence—unclouded by Anais and John's evidence—would be the only evidence before us. The result in that context would be that Yan presented more than a scintilla of evidence reasonably implying Anais and John's agreement to be married. Yet the trial court did not recognize that result and erred by not considering Yan's evidence in the light most favorable to him and resolving any doubts in his favor as our supreme court requires. *See, e.g., W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005).

For all these reasons, we should reverse the trial court's judgment and remand the case for further proceedings.