**AFFIRMED and Opinion Filed February 10, 2023**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00788-CV**

## IN THE INTEREST OF L.A.M. AND L.A.M., CHILDREN

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-20368**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Garcia

Penelope Flores ("Girlfriend") filed a petition for divorce asserting an informal marriage with Jessica Moreno ("Mother") and requested temporary orders concerning L.A.M. and L.A.M. (together, the "Children"). The trial court dismissed the petition for lack of standing. In a single issue, Girlfriend now argues the trial court erred in concluding there was no informal marriage between the parties. As explained below, we affirm the trial court's final order.

## I. Background

Mother and Girlfriend lived together, with a brief separation, from approximately 2010 until 2018. In 2016, Mother became pregnant through artificial insemination and gave birth to the Children.

Girlfriend moved out in September 2018. In October 2019, she filed an original petition for divorce and requested temporary orders. The original petition alleges that Girlfriend and Mother were married in 2008, but the petition was subsequently amended to allege that July 1, 2012 was the date of the marriage.

An associate judge found that the parties were not married, and that Girlfriend was not a parent of the Children. On appeal of that ruling, the District Judge found that Girlfriend lacked standing and denied all Girlfriend's requests.

The District Judge signed an order of dismissal for lack of standing (the "Initial Order"). The Initial Order denied Girlfriend's request for temporary orders regarding the Children and dismissed all causes of action "relating to the Children." Girlfriend appealed.

We questioned our jurisdiction over the appeal because the dismissal order was not final and appealable because it did not dispose of all issues; namely, the divorce. Accordingly, the District Judge signed a modified dismissal order for lack of standing ordering that Girlfriend's causes of action relating to the Children as well as any claims relating to the divorce were dismissed for lack of standing. Girlfriend appeals from the final order of dismissal.

## II.   Analysis

Girlfriend's sole issue on appeal argues the trial court erred in finding there was no informal marriage because the evidence is legally and factually sufficient to prove that the parties were married. We disagree.

Texas law provides two ways to enter a valid marriage: through a ceremonial marriage, or through an informal one. *Hinojosa v. LaFredo*, No. 05-18-01543-CV, 2021 WL 2217165, at *5 (Tex. App.—Dallas Jun. 2, 2021, pet. denied) (mem. op) (citations omitted); *see* TEX. FAM. CODE ANN. §§ 2.001, 2.202, 2.401. An informal, or common law marriage is at issue here.

An informal marriage can be established in one of two ways. First, a party may present evidence that the parties filed a declaration of informal marriage with the county clerk. *Hinojosa*, 2021 WL 2217165, at *5 (citing TEX. FAM. CODE ANN § 2.401(a)(1)). While such a declaration constitutes prima facie proof of the parties' informal marriage, parties may have a valid common law marriage without filing one. *See Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993).

Second, a couple may establish an informal marriage by demonstrating that: (1) they agreed to be married; (2) after the agreement they lived together in Texas as husband and wife; and (3) in Texas they represented to others that they were married. TEX. FAM. CODE ANN § 2.401(a)(2); *Estate of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at *3 (Tex. App.—Dallas Feb. 22, 2021, no pet.) (mem. op.); *Hinojosa*, 2021 WL 2217165, at *5. An informal marriage does not exist until the concurrence of all three elements. *Winegardner v. Hughes,* No. 07-18-00434-CV, No. 07-19-00283-CV, 2020 WL 1966283, at *3 (Tex. App.—Amarillo Apr. 23, 2020, no pet.) (mem. op.).

The existence of an informal marriage is a fact question. *Joplin v. Borusheski*, 244 S.W.3d 607, 610–11 (Tex. App.—Dallas 2008, no pet.); *In re Whetstone*, No. 05-18-00165-CV, 2019 WL 698090, at \*1 (Tex. App.—Dallas Feb. 20, 2019, pet. denied) (mem. op). The party seeking to establish the existence of an informal marriage bears the burden of demonstrating the three elements by a preponderance of the evidence. *Pandozy*, 2021 WL 711500, at \*3; *In re J.G.S.*, No. 05-18-00452-CV, 2019 WL 336543, at \*3 (Tex. App.—Dallas Jan. 28, 2019, no pet.) (mem. op.).

At trial, Girlfriend had the burden to establish all elements of the alleged informal marriage. On appeal, when a party attacks the legal sufficiency of an adverse finding on an issue for which she had the burden of proof, the party must demonstrate on appeal that the evidence conclusively proves as a matter of law all vital facts in support of the issue. *Whetstone,* 2019 WL 698090, at \*1. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Id.* When a party challenges the factual sufficiency of an adverse finding on an issue for which she has the burden of proof, the challenge will be sustained only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

In the present case, the evidence does not establish an agreement to be married or that the parties represented to others that they were married. The parties' agreement to be married is fundamental to a valid informal marriage. *Gary v. Gary*, 490 S.W.2d 929, 932 (Tex. App.—Tyler 1973, writ ref'd n.r.e.). As with any

–4–

ultimate fact, the agreement may be established by direct or circumstantial evidence. *Russell*, 865 S.W.2d 933.

Girlfriend testified that the parties exchanged rings and agreed to be together forever. But she never said the parties agreed to be married. Mother denied that she and Girlfriend exchanged rings. Instead, they had similar rings representing that they are gay. Girlfriend wore her ring on her index finger, not her ring finger.

Mother unequivocally stated that the parties were not married and there was no agreement to call Girlfriend her spouse. There was no ceremony, nor was there public representation that she and Girlfriend were married.

Mother explained that she and Girlfriend never talked about getting married because Mother was "technically" married to someone else. This marriage involved a formal ceremony. Girlfriend told Mother they would never be married because Mother was married to someone else.

Mother's cousin also testified that Mother and Girlfriend were not married and there had been no ceremony. If there had been a ceremony, she would have been invited because she attended the ceremony for Mother's marriage to the other individual.

The evidence showed that Mother and Girlfriend lived together for many years. Girlfriend was present when Mother was pregnant, attended prenatal doctor's appointments and was with her for the Children's birth. She assisted with childcare. When asked what showed an agreement to be married, Girlfriend said that she and

Mother "spent their lives together," going on family trips, sending out Christmas cards, and spending every holiday together.

Evidence of cohabitation and holding out the other party as one's spouse may constitute some evidence of an agreement to be married depending on the facts of the case. *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied.). Because in modern society it is difficult to infer an agreement to be married from cohabitation, evidence of "holding out" must be particularly strong to be probative of such an agreement. *Id.* Holding out requires more than occasional references to one another as spouse. *See Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.). A couple's reputation in the community as being married is a significant factor in determining the holding out element. *Id.*

While they were living together, the parties maintained a joint bank account, credit card, and cell phone account. They purchased a house together, but the deed listed each party's marital status as single. The parties never filed joint tax returns and listed their status as "single" or "head of household."[1] Girlfriend's name is not on the Children's birth certificates.

Girlfriend's evidence included forms from the fertility clinic listing her as Mother's spouse. She acknowledged, however, that one page also stated that Mother was "unmarried." And the parties signed a "Co-parenting Agreement Policy for

---

[1] For two tax years during the relationship, Girlfriend claimed one of the Children as a dependent.

–6–

Unmarried Couples." Girlfriend's evidence also included a family medical leave form from her employer listing Mother as her "partner," love notes from Mother, and family photographs.

Girlfriend testified that she and Mother had two baby showers where she was "an attending parent," and referred to as a "mommy." Girlfriend has designated Mother and the Children as beneficiaries in her life insurance. Mother initially designated Girlfriend as a beneficiary on her life insurance but changed that designation to the Children after they were born.

Signing a document in the capacity as spouses constitutes some evidence of holding out to the public. *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex. App.—Dallas 1985, no writ). Conversely, evidence that an alleged spouse listed herself as single on tax returns is evidence that there is no informal marriage. *Gary*, 490 S.W.2d at 933.

Here, the isolated references to the parties as spouses on forms are not "particularly convincing" evidence of holding out. *See Assoun*, 493 S.W.3d at 160; *In re B.H.W.*, No. 05-15-00841-CV, 2017 WL 2492612, at *4 (Tex. App.—Dallas Jun. 9, 2017, pet. denied) (mem. op.) (couples isolated references to each other as spouses generally insufficient to constitute a public representation that a marriage exists). Likewise, the only disinterested witness who testified said the parties were not married. And while the love notes and photographs may evidence a relationship, they do not establish an agreement to be married.

Finally, to the extent there was conflicting evidence, the conflict was to be resolved by the fact finder. *J.G.S.*, 2019 WL 336543, at *3. The trial court was free to disbelieve Girlfriend and credit Mother's testimony.

After reviewing the entire record, we cannot conclude that the trial court's determination that Girlfriend failed to meet her burden to establish an informal marriage is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See id*. We resolve Girlfriend's sole issue against her and affirm the trial court's final order.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210788F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF L.A.M.
AND L.A.M., CHILDREN,
No. 05-21-00788-CV

On Appeal from the 254th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-20368.
Opinion delivered by Justice Garcia.
Justices Reichek and Nowell
participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Jessica Moreno
recover her costs of this appeal from appellant Penelope Flores.

Judgment entered this 10th day of February 2023.