

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00279-CR
_____

JUAN MORA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2014-402,039, Honorable Jim Bob Darnell, Presiding

July 20, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Juan Mora appeals his conviction by jury of the offense of aggravated assault with a deadly weapon[1] and the resulting sentence of life imprisonment. He presents two issues, one challenging an evidentiary ruling, the other challenging the sufficiency of evidence to overcome his claim of self-defense. We will overrule both and affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2016).

Background

Appellant was indicted for intentionally, knowingly, or recklessly causing bodily injury to Elizabeth Garcia by stabbing her or striking her with a deadly weapon, a knife sharpener.[2]

In April 2014, Garcia was found on the bloody kitchen floor of her small Lubbock apartment with multiple stab wounds to her body and the eight-inch shaft of a knife-sharpening steel embedded in her head. She survived her wounds after a neurosurgeon removed the metal rod. Two kitchen knives also were found lying on the floor.

Garcia's injuries were such that police were unable to obtain a statement from her. Neighbors testified they heard fighting and screaming coming from Garcia's apartment and heard Garcia calling for help. When they pounded on the door, appellant opened the door and walked out, telling the neighbors there was another person in the apartment beating Garcia. The neighbors investigated, but found no adult but Garcia in the apartment.[3] Appellant ran from the apartment complex. Six witnesses saw appellant flee and run toward a nearby field. Police later tracked his cell phone to a hotel, where they found him hiding. He was arrested there without incident.

Appellant did not testify at his trial. His claim of self-defense was based primarily on statements he made in telephone calls from jail and text messages he exchanged with family members. Those statements were to the effect that he and Garcia were

---

[2] The indictment also included an enhancement paragraph, setting forth appellant's previous felony conviction. Appellant pleaded "true" to the enhancement.

[3] Her two small children also were present.

2

using drugs in her apartment when an unidentified man appellant did not know came into the apartment and participated in their drug use. His statements further indicated Garcia and the man then began punching appellant and attacking him with knives in what appellant thought was an attempt to rob him. Appellant said he remembered fighting back from an attack he thought could kill him. Appellant made similar statements to a detective who took photographs of him after his arrest.

There was testimony that a man was seen hurrying down the stairs near Garcia's apartment a short time before appellant descended the same stairs.

Analysis

Sufficiency of the Evidence and Assertion of Self-Defense

We first address appellant's second issue wherein he contends the evidence was insufficient to support his conviction because he "presented a very strong case that he acted in self-defense."

A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. App. 2003) (*citing Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. App. 1991) (en banc)). Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 913. This burden of persuasion does not require the State to produce evidence to refute the self-defense claim, but requires only that it prove its case beyond a reasonable doubt. *Id.* Thus, self-defense is not an affirmative defense that the defendant must prove by a preponderance of the evidence, but is instead a defense that the State must overcome in its burden of proving

3

the elements of the offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 2.03 ("defenses to prosecution"); Tex. Penal Code Ann. § 2.04 ("affirmative defenses to prosecution"); TEX. PENAL CODE ANN. § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter"); TEX. PENAL CODE ANN. § 9.31 (providing requisites for self-defense).

Where, as here, there is a claim of self-defense rejected by the jury, we must consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational fact finder could have found beyond a reasonable doubt the essential elements of the offense and against the appellant with regard to self-defense. *Darkins v. State,* 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (*citing Saxton*, 804 S.W.2d at 913). A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim. *Saxton*, 804 S.W.2d at 914. Here, appellant has not directly challenged the sufficiency of the evidence to support the essential elements of the aggravated assault with a deadly weapon. We will therefore review only whether a rational fact finder could have found beyond a reasonable doubt against appellant on the self-defense issue.

A person is justified in using deadly force against another if he reasonably believes that deadly force is necessary to protect against the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. § 9.32(a). The reasonableness of an accused's belief that force was required to defend himself is viewed from the defendant's standpoint at the time he acted. *Juarez v. State,* 886 S.W.2d 511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The issue of self-

4

defense is a fact issue to be determined by the jury, and a jury is free to accept or reject the defensive issue, even if the evidence is uncontroverted. *Wilkerson v. State,* 881 S.W.2d 321, 324 (Tex. Crim. App. 1994); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). As noted, although the State bears the burden of persuasion to disprove the issue of self-defense, it is not required to affirmatively present evidence that specifically refutes the defendant's self-defense evidence. *Saxton,* 804 S.W.2d at 913-14; *see Medina v. State*, 411 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("jury is free to reject the defensive evidence," *citing Saxton,* 804 S.W.2d at 913-14); *Denman v. State*, 193 S.W.3d 129, 132-33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (jury not required to accept defendant's self-defense claim).

We first take note that the only evidence placing another man in Garcia's apartment at the time she was stabbed came from appellant's statements in his recorded telephone calls made from jail and his text messages. The State argued to the jury there was no other man, and the jury was free to reject appellant's version as self-serving. *See Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (jury is the sole judge of the weight of the evidence and may choose to believe all, some or none of it). The witness who said she saw another man descend the stairs did not say he came from Garcia's apartment, nor did she express any other reason to connect him with Garcia's attack.

On appeal, appellant also points to DNA evidence. Most of the DNA evidence showed the blood samples collected contained Garcia's blood or a mixture of Garcia's and appellant's blood. One sample, however, indicated a mixture containing the DNA of a third, unidentified person.

Appellant also had wounds. Police photographs taken after his arrest showed cuts or scratches at various points on appellant's body, primarily his limbs and torso. An officer testified some of the wounds could be characterized as defensive. The officer also said the wounds appeared to be of no substantial depth, and that none of them were punctures. The officer's latter remark is supported by the photographs. None of the injuries appear serious enough to require bandaging. By comparison, photographs depict Garcia's stab wounds as deep and sutured. There was evidence also that appellant told different stories about his wounds. The detective who took appellant's photographs testified appellant said he was protecting himself from a knife attack by an unknown man. In his text messages, he told Chandra Stewart, with whom he was living, that he sustained cuts from Garcia while defending himself but told his mother the same cuts were sustained while he was walking through a field. He told the woman he was with at the hotel on his arrest that rips in his clothes were caused by a fight at work.

There was testimony Garcia was screaming, "help, he's trying to kill me" when neighbors approached the door. The only statement regarding Garcia that appellant made as he left the apartment was his assertion that someone else was in the apartment attacking Garcia. Appellant's mother, who was among those at the door when he walked out, testified her son "said something to the effect that someone was beating up the girl in the apartment." She then was asked if "because of this did you look around through the apartment?" She responded, "I sure did. We all did." Appellant's mother reiterated, "I had that understanding when he was at the door, that

6

someone was beating up the girl." She agreed that "from looking around in there that wasn't true." [4]

Appellant's statement on leaving Garcia's apartment that someone else was beating her runs directly contrary to his later assertions that the other man, and Garcia, attacked him, requiring him to defend himself against her. Appellant later sent a text message to his mother stating he was going to Mexico after he had "just defended" himself. He also sent several to Stewart, indicating he believed he had defended himself against Garcia. The messages admitted at trial also reflected statements to Stewart that he had "just lost [i]t" and his life was "over" and statements to his mother that he was going to commit suicide instead of going to prison. The State argues these statements indicate appellant's awareness of the consequences of his actions and indicate he did not, in fact, act in self-defense when he assaulted Garcia. The jury also saw text messages from appellant to Garcia of a sexually suggestive nature. In her messages in response, Garcia indicated she did not reciprocate appellant's sexual feelings.

Appellant also claimed the unknown man robbed him but the woman appellant stayed with after the assault testified appellant had "a lot" of money with him when he came to the hotel room.

---

[4] Another neighbor, the first to reach Garcia's apartment door, also testified appellant said "somebody was beating her up" as he walked past after the apartment door was opened. This neighbor continued, "And so . . . I believed him at the time, so I ran inside to see who it was." Finding only Garcia's two children standing in the apartment living room, the neighbor "ran to the bedroom, to the bathroom, and I checked everywhere to see if anyone was hiding." Like appellant's mother, this neighbor found no adult but Garcia in the apartment.

7

Appellant does not challenge on appeal the evidence he was the person who inflicted life-threatening injury on Garcia. Instead, he argues the jury had an insufficient basis on which to reject his contention he was justified in doing so because he reasonably believed such deadly force was necessary to protect himself against Garcia's use or attempted use of unlawful deadly force. We disagree with the argument. Even if a juror believed appellant received the injuries shown in his photographs in an encounter in Garcia's apartment, the disparity between his relatively insignificant wounds and Garcia's grievous injuries gives the juror good reason to doubt that appellant reasonably believed such deadly force was necessary. In that regard, we note the evidence appellant is a large man and Garcia a relatively small woman, 4' 11" in height. And the inconsistencies between appellant's statement as he left the scene and his later statements, coupled with the lack of substantive evidence that anyone other than appellant and Garcia participated in their confrontation, gave the jury ample reason to doubt appellant's version of the events. As the fact-finder, and in its role of weighing the evidence presented, the jury was free to disbelieve appellant's assertion he was justified in his assault on Garcia, and find him guilty instead. *Saxton,* 804 S.W.2d at 913-14 (defensive evidence that is "merely consistent with the physical evidence at the scene" will not render the State's evidence insufficient because the credibility determination for such evidence is solely within the fact finder's province).

We find appellant's second issue without merit, and resolve it against him.

8

Spousal Immunity

In appellant's first issue, he contends the trial court erred when it overruled his objection to the testimony of his alleged common-law wife, Stewart, after she asserted spousal immunity. The State called Stewart to testify.

Texas Rule of Evidence 504(b) provides that the spouse of the accused in a criminal case has a privilege not to be called to testify for the State. TEX. R. EVID. 504(b). The privilege may be claimed by the accused's spouse. TEX. R. EVID. 504(b)(3). *See also Benitez v. State,* 5 S.W.3d 915, 918 (Tex. App.—Amarillo 1999, pet. ref'd). We review the trial court's decision to admit Stewart's testimony for an abuse of discretion. *Gonzalez v. State*, No. 05-11-00052-CR, 2012 Tex. App. LEXIS 5215, at *9 (Tex. App.—Dallas June 28, 2012, no pet.) (mem. op., not designated for publication).

The Texas Family Code provides that an informal marriage may be proven by evidence that the couple "agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a) (West 2006) (emphasis added). An informal, or common law, marriage does not exist until the concurrence of all three elements. *Van Hooff v. Anderson,* No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, *7 (Tex. App.—Amarillo January 14, 2016, no pet.) (mem. op.) (citations omitted).

The court held a hearing outside the jury's presence to address the informal marriage issue. Stewart was the only witness who testified.

To establish the element of an agreement to be married, the proponent of an informal marriage "must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Small v. McMaster,* 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *Eris v. Phares,* 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). An agreement to be informally married may be established by direct or circumstantial evidence. *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex. 1993).

No documentary evidence of an agreement was presented. *Cf. Van Hooff,* 2016 Tex. App. LEXIS 466 at *10. The testimony of one of the parties to the marriage that the couple agreed to be married constitutes some direct evidence of that element. *Id.* at *11. Stewart's testimony, however, is weak on the point. During her testimony, she was first asked about an agreement to be married during the State's cross examination.[5] The prosecutor asked, "when did you two expressly agree that you would

---

[5] Appellant's counsel twice led Stewart through conclusory recitations of elements of an informal marriage. Her testimony on direct examination was the following:

Q. What is your relationship with Mr. Juan Mora?
A. My husband.
Q. Okay. Are y'all common-law or ceremonially married?
A. Common-law.
Q. How long have y'all been common-law married?
A. Gosh, it was back in 2007.
Q. Okay. And you have held yourself out and told others that you are husband and wife?
A. Yes.
Q. And do people generally consider y'all as husband and wife?
A. Yes, they do.
Q. And y'all have children together?
A. Yes.
Q. And you've represented to others and Mr. Mora has represented to others that y'all are – y'all are married?

be man and wife; that you would be married?" Stewart responded by referring to an occasion some years before when appellant was in jail and she made effort to arrange for them to be married, in what appellant's counsel later referred to as a "proxy marriage."[6] Asked again later by the prosecutor "what year [she] and [appellant] had an agreement amongst yourselves to hold yourselves out as man and wife," Stewart again referred to the occasion "the first time he went down." It is clear the effort to arrange a proxy marriage was not completed. "Common law marriage requires that there be some agreement presently to be married, not to marry sometime in the future." *Colburn v. State*, 966 S.W.2d 511, 515 (Tex. Crim. App. 1998) (citation omitted). The trial court could have seen Stewart's testimony regarding an agreement merely to indicate she and appellant had an agreement to be formally married, an agreement that had yet to be carried out.[7] The testimony thus reasonably can be seen as presenting

---

A. Yes.
Q. Okay. And we visited quite a bit about the spousal privilege as far as testimony goes; is that correct?
A. Yes.
Q. And is it your desire to assert the spousal privilege and not be forced to testify in this trial?
A. It is.
Q. Okay.

Counsel later led Stewart through similar questioning. The questions addressed their cohabitation and their "holding out to others," but none of the questions inquired about an agreement with appellant.

[6] *See In re K.R.P.*, 80 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (using same phrase).

[7] An intention to be married ceremonially in the future is not necessarily inconsistent with an agreement presently to be married informally. *See Carty v. Thaler,* 583 F.3d 244, 261 (5th Cir. 2009), *cert. denied,* 559 U.S. 1106, 130 S. Ct. 2402, 176 L. Ed. 2d 923 (2010) (applying Texas law). But neither does such an intention prove the existence of a present agreement.

11

no direct evidence they had in fact agreed to be husband and wife. *See Small*, 352 S.W.3d at 283.

Evidence of cohabitation and "holding out" may, in some cases, constitute some evidence of an agreement to be married. *Russell,* 865 S.W.2d at 932-33 (citation omitted). Our courts have recognized, however, that "it is difficult to infer an agreement to be married from cohabitation in modern society." *Assoun v. Gustafson,* 493 S.W.3d 156, 160 (Tex. App.—Dallas May 3, 2016, pet. denied) (*citing Russell,* 865 S.W.2d at 932). For that reason, the evidence of holding out must be particularly convincing to be probative of an agreement to be married. *Id.* (citing *Russell,* 865 S.W.2d at 932).

On questioning by the court, Stewart said she had told "co-workers, my boss, family, friends" she and appellant were married. She also testified she and appellant have two children together. During argument, appellant's counsel pointed out to the court that some of the State's witnesses had in their testimony referred to Stewart as appellant's wife. On cross-examination, Stewart acknowledged she and appellant never "formally married" and she had expressed to others, including appellant's mother, that she was "done" with appellant. She also told the court she had at times used the last name "Mora" but "it's not an every day thing I go by Mora." She also stated that she filed "head of household" income tax returns, that she had a joint banking account with appellant "at one time," and that the two had once applied for a payday loan as husband and wife.

We find the testimony provides some evidence Stewart and appellant represented to others that they were married. *See Van Hooff*, 2016 Tex. App. LEXIS

466 at *13-*16 (evaluating evidence of holding out element).  It is not, however, the "particularly convincing" evidence probative of an agreement to be married.  *See Assoun*, 493 S.W.3d at 160.  And certainly it is not so convincing as to demonstrate the trial court abused its discretion by overruling Stewart's claim to a spousal privilege not to testify against appellant.  *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (trial court abuses its discretion in ruling on admission of evidence when decision lies outside the zone of reasonable disagreement); *see also Russell*, 865 S.W.2d at 932 (contrast drawn between assertions of marriage made with consequences and those "made in a self-serving context") (citation omitted).

We overrule appellant's first issue.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Pirtle, J., concurs in the result.

Do not publish.

13