**AFFIRMED as MODIFIED and Opinion Filed December 20, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00235-CV**

## IN RE THE ESTATE OF BOBBIE WILLINGHAM

**On Appeal from the Probate Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. PR 17-04085-3**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

Bobbie Willingham signed a simple will in which she left her estate to appellant Angel Elizondo. When Elizondo submitted the will for probate, Willingham's son, appellee Robert Willingham, challenged the will. A jury determined Bobbie's will was invalid and awarded the estate to Bobbie's heirs at law. The jury also found that Elizondo committed civil theft in excess of $20,000 against Bobbie's estate and awarded attorney's fees.

On appeal, Elizondo challenges (1) the legal and factual sufficiency of the evidence supporting the jury's finding that the will was invalid, (2) the factual sufficiency of the evidence supporting the jury's finding of civil theft, and (3) the legal and factual sufficiency of the evidence supporting the award of appellate

attorney's fees. Because the record contains no evidence supporting the award of appellate attorney's fees, we reverse and modify the judgment to delete the appellate attorney's fees. As modified, we affirm the trial court's judgment.

## Background

The Elizondos moved into the Willinghams' neighborhood in the early nineties. The neighbors saw each other daily between 2000 and 2010. Mr. Willingham was more outgoing and regularly visited with the Elizondos in the front yard. Bobbie, his wife, was more reserved and interacted only on occasion. Despite Bobbie's reserved nature, friends described her as "feisty, strong-willed," and she said what she wanted.

After Mr. Willingham died in 1996, Bobbie became even more reserved and rarely left the house. Elizondo continued to help Bobbie and her adult daughter, and he often took Bobbie to doctor's appointments.

In August 2017, Bobbie paid off Elizondo's mortgage and transferred her car title to him. Whether Elizondo influenced her to make these transactions later became a point of contention with Bobbie's family.

On August 25, 2017, Bobbie was admitted to the hospital after suffering a heart attack. On August 31, 2017, nurse notes indicate she and Robert had a fight. The family discovered that Elizondo was in possession of Bobbie's purse and house keys. They believed Elizondo was stealing from Bobbie and unduly influencing her.

On September 1, 2017, Bobbie executed a simple will leaving all her estate to Elizondo. The will included handwritten statements that "Robert Willingham shall receive $1.00. Susan Hall is to receive 0 zero % of my properties, bank accounts, nor any stocks. Susan Hall is to receive nothing of mine." Susan is Robert's wife.

Within hours of executing the will, Bobbie had heart surgery.

On September 27, 2017, Robert sued Elizondo for theft, undue influence of an elderly adult, and fraud.

Bobbie died on November 1, 2017. On November 6, 2017, the trial court issued a temporary injunction against Elizondo preventing him from attempting to sell or divert certain assets including, but not limited to, (1) a $29,360 check to Wells Fargo to "pay off" his mortgage (2) a $10,000 check from Wells Fargo, (3) multiple gold and silver items, (4) a 38-caliber pistol, and (5) a 2015 Ford Escape automobile.

Elizondo submitted Bobbie's will for probate on December 6, 2017. Robert filed his objection to probating the will and requested a jury trial. The jury determined Bobbie's will was invalid and found Elizondo committed civil theft with the value of the stolen property being greater than $20,000.[1] The jury also awarded attorney's fees for trial and future appellate attorney's fees. This appeal followed.

---

[1] The jury was also asked to determine whether Bobbie had testamentary capacity to sign her will and whether she signed her will because of undue influence. The jury, however, did not answer these questions because they were conditioned on an affirmative answer to question number 1 regarding the validity of the will.

## Validity of the Will

In his first two issues, Elizondo argues the evidence is legally and factually insufficient to support the jury's finding that Bobbie's will was invalid. Specifically, he contends the arguments at trial "contorted the meaning" of a "credible witness" to a will, which has a specific meaning and is not simply a person who is truthful or worthy of belief. Robert responds the evidence is both legally and factually sufficient, as measured by the unobjected-to jury charge, and the jury was free to determine witness credibility in his favor.

Though not raised by either party, we begin by determining whether Elizondo preserved his sufficiency challenges to the validity of the will. To preserve a legal sufficiency complaint, a party must: (1) present a motion for instructed verdict or judgment notwithstanding the verdict; (2) object to the submission of a jury question; (3) present a motion to disregard the jury's answer to a vital fact issue; or (4) file a motion for new trial. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992); *see also Hollingsworth v. Parklane Corp.*, No. 05-19-01576-CV, 2021 WL 1290735, at *3 (Tex. App.—Dallas Apr. 7, 2021, no pet.) (mem. op.). To preserve a factual sufficiency challenge, the party must present the specific complaint to the trial court in a motion for new trial. TEX. R. CIV. P. 324(b)(2), (3); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *Hollingsworth*, 2021 WL 1290735, at *3. Elizondo took none of these actions. Although he filed a motion for new trial, his motion did not include any legal or factual sufficiency challenge to the jury's

finding regarding the validity of the will. Thus, Elizondo failed to preserve his arguments for review. We overrule his first and second issues.

## Civil Theft

In his third issue, Elizondo argues the evidence is factually insufficient to support the jury's finding that he committed civil theft. Specifically, he asserts there is no evidence he stole a $10,000 check, used a $29,360 Wells Fargo check from Bobbie to pay off his mortgage, took silver and gold items, stole a gun, or coerced Bobbie into signing over her car title to him. Robert responds the evidence is factually sufficient, and we must defer to the jury's finding.

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if, after considering all the evidence, it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Harris Cty. v. Coats*, 607 S.W.3d 359, 380–81 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *Coats*, 607 S.W.3d at 381. If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm. *Id*.

We apply these standards mindful that this Court is not a factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The trier of fact is the sole judge of witness credibility and the weight afforded their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005). Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Coats*, 607 S.W.3d at 381.

The Texas Theft Liability Act permits a civil cause of action for damages against a party who commits theft via any of the numerous methods defined under the Texas Penal Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.003 (creating civil claim for "theft"); TEX. PENAL CODE ANN. §§ 31.03, 31.10 (defining "theft").

Under the theory applicable to this case, Robert had to prove by a preponderance of the evidence that Elizondo unlawfully appropriated Bobbie's property with intent to deprive her, or another person who had the right of exclusive possession, of the property without their effective consent. *See Brown v. Kleerekoper*, No. 01-11-00972-CV, 2013 WL 816393, at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem. op.).

The relevant "intent to deprive" is the person's intent at the time of the taking and can be inferred from the words and acts of the person. *See McCullough v. Scarbrough, Medlin & Assoc., Inc.*, 435 S.W.3d 871, 906 (Tex. App.—Dallas 2014, pet. denied); *see also Arey v. Shipman Agency, Inc.*, No. 10-18-00100-CV, 2019 WL 1966896, at *4 (Tex. App.—Waco May 1, 2019, pet. denied) (mem. op.). Intent,

–6–

absent direct admission, is usually inferred from circumstantial evidence. *See Sky Group, LLC v. Vega St. 1, LLC*, No. 05-17-00161-CV, 2018 WL 1149787, at *6 (Tex. App.—Dallas Mar. 5, 2018, no pet.) (mem. op.). Intent is generally an issue of fact because it depends on the credibility of the witnesses and the weight to be given their testimony. *Id*.

The jury was asked, "Did Applicant commit theft, and was the value of the stolen property $20,000 or greater, against the Estate of Bobbie Willingham?" The jury answered affirmatively.

Elizondo argues Robert failed to present any evidence that he acted with the intent to deprive anyone of property. Elizondo relies on the following four pieces of evidence: (1) the evidence overwhelmingly established that Bobbie left her estate to Elizondo; (2) Elizondo and his wife testified that Bobbie decided to pay off their mortgage and that Bobbie gave them $10,000; (3) there was no contrary evidence that would have allowed a jury to rationally believe he stole property from Bobbie; and (4) "efforts to characterize Bobbie as 'crazy' or 'out of her mind' or otherwise lacking capacity were unsuccessful."

When reviewing the entire record, as we must, the evidence supporting the civil theft finding is not so weak as to make the finding clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176. First, because Elizondo failed to preserve his issue regarding the validity of the will, we our bound by the jury's determination that he

was not the beneficiary under Bobbie's will. As such, Elizondo's argument to the contrary is not evidence against the jury's civil theft finding.

As for Bobbie paying off Elizondo's mortgage, Elizondo testified that Bobbie offered to pay his mortgage a couple times, but he repeatedly said no. However, he eventually agreed to take her to the bank where Bobbie talked to bank representatives outside of his presence. The representatives later told him that Bobbie paid off the mortgage, he was instructed to sign some papers, and they congratulated him. He denied forcing or coercing Bobbie to do it.

Bobbie transferred her car title to Elizondo about a week after he used the $29,360 Wells Fargo check to pay off his mortgage. Robert did not know the circumstances surrounding the title transfer, but he believed Bobbie was not in her right mind. He explained Bobbie would not give her car to anyone, not even a relative. She was not the type to give extravagant gifts because "[t]hat was not the way she was."

Elizondo denied removing any items from Bobbie's home, including a gun, which he later relinquished to the police. Robert explained that Bobbie never gave the gun away "because she liked guns." He believed that if she gave the gun to Elizondo, "she wasn't in her right mind."

Elizondo denied taking silver and gold items from Bobbie, but admitted he took them to the bank for her to put in her safe deposit box. When they would not fit, she took them back home. Elizondo alleged she later sold some of them, but the

others remained in her home. Robert, however, explained that Bobbie sold the bars and coins and received about $10,000, which she kept in her purse. Robert discovered that Elizondo had Bobbie's house keys and purse during the time Bobbie was in the hospital. When Robert regained possession of the purse, the money was gone.

As the judge of witness credibility, the jury did not have to believe Elizondo's testimony regarding the property. *City of Keller*, 168 S.W.3d at 819–20; *Coats*, 607 S.W.3d at 381. Instead, the jury heard several witnesses testify that Bobbie's mental faculties seemed to be failing in the months leading up to her death. Robert testified that Bobbie was not the type to give extravagant gifts. Susan Hall, Bobbie's daughter-in-law, testified Bobbie once agreed that Elizondo drove her crazy coming in and out of the house all the time. Also telling, is a notation in Bobbie's medical records from a few days before she signed her will that indicated family "has concerns regarding a neighbor that is 'persuading' her to keep family away. Stated the neighbor has pt's keys to her home, access to her car and purse." The hospital instructed the family to contact the police, and the hospital contacted Adult Protective Services to report "family concern of a neighbor possibly taking financial advantage of pt.'

The jury heard two versions of what happened to the property: Elizondo denying taking or influencing Bobbie to give him her property and family members

testifying to the contrary. As the judge of witness credibility, the jury was free to believe the family. *City of Keller*, 168 S.W.3d at 819–20.

We conclude the evidence, which in this case is circumstantial and depends on witness credibility, is not so weak as to make the jury finding clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *see also Sky Group, LLC*, 2018 WL 1149787, at *6 ("Intent, absent direct admission, is usually inferred from circumstantial evidence" and intent depends on the credibility of the witnesses and the weight to be given their testimony). Thus, the evidence is factually sufficient to support the jury's finding of civil theft. We overrule Elizondo's third issue.

### Appellate Attorney's Fees

In his fourth and fifth issues, Elizondo argues the evidence is legally and factually insufficient to support the award of appellate attorney's fees. Robert does not direct us to any evidence in support of the award, but instead references the parties' "agreement" to submit the issue to the jury.

To preserve a legal sufficiency issue for appellate review, a party must: (1) present a motion for instructed verdict or judgment notwithstanding the verdict; (2) object to the submission of a jury question; (3) present a motion to disregard the jury's answer to a vital fact issue; or (4) file a motion for new trial. *See T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 220; *see also Hollingsworth*, 2021 WL 1290735, at *3. To preserve a factual sufficiency challenge, the party must present the specific

complaint to the trial court in a motion for new trial. TEX. R. CIV. P. 324(b)(2), (3); *Cecil*, 804 S.W.2d at 510; *Hollingsworth*, 2021 WL 1290735, at *3.

Elizondo took none of these actions to preserve his legal sufficiency challenge to the jury's award of appellate attorney's fees. Thus, we overrule his fourth issue. However, Elizondo challenged the factual sufficiency of the evidence in his motion for new trial; therefore, we address it below.

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, the party must "demonstrate there is insufficient evidence to support the adverse finding." *Estate of Matthews III*, 510 S.W.3d 106, 117 (Tex. App.—San Antonio 2016, pet. denied). We consider all the evidence but will not reverse the judgment unless the evidence which supports the jury's finding is so weak as to make the finding clearly wrong and manifestly unjust. *Id*.

> The following agreement was read to the jury prior to the jury instructions.
>
> There will be a consideration of attorney's fees. Mr. Perez, the attorney for the Applicant, has already been paid $34,000. Mr. Wilson, the attorney for the Respondent, has already been paid $24,000, so when you are considering their attorney's fees, you can award any amount between zero and up to whatever amount you want; however, you need to have known that they've already been paid a certain amount of money, that being [$]34,000 for Mr. Perez and [$]24,000 for Mr. Wilson, okay? All right.

Generally, the party seeking to recover attorney's fees carries the burden of proof. *Assoun v. Gustafson*, 493 S.W.3d 156, 168 (Tex. App.—Dallas 2016, pet. denied). An award of attorney's fees may include appellate attorney's fees. *Id*. The

–11–

jury awarded Robert's attorney $10,000 for representation in the trial court, $20,000 for representation through appeal to the court of appeals, $5,000 for representation at the petition for review stage to the Texas Supreme Court, $15,000 for representation at the merits briefing stage in the Texas Supreme Court, and $15,000 for oral argument and the completion of proceedings at the Texas Supreme Court.

In *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020), the supreme court discussed the nature of contingent appellate attorney's fees and noted that at the point any fees are awarded, an appeal is still hypothetical. The court observed that there is no certainty regarding who will represent the appellee in the appellate court, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant raises. *Id*. The court then concluded, "[T]his uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id*.; *see also Assoun*, 493 S.W.3d at 168 (holding insufficient evidence to support award of contingent appellate fees when there was no testimony that "included an opinion of what a reasonable attorney's fees would be for the services that would be necessary in the event of an appeal").

Here, although the parties stipulated to the amount of attorney's fees paid prior to trial and left open the award of reasonable attorney's fees through trial, neither

–12–

Robert's attorney, nor anyone else, provided any evidence as to what a reasonable attorney's fee would be for the necessary services in the event of an appeal. *See Yowell*, 620 S.W.3d at 355); *see also Assoun*, 493 S.W.3d at 168.

Having independently reviewed the record, we conclude there is no evidence to support the jury's award of appellate attorney's fees. We sustain Elizondo's fifth issue.

## Conclusion

We modify the trial court's judgment to delete the portion granting Robert's appellate attorney's fees. As modified, we affirm the trial court's judgment.

/Craig Smith/
CRAIG SMITH
JUSTICE

200235F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: THE ESTATE OF BOBBIE WILLINGHAM

No. 05-20-00235-CV

On Appeal from the Probate Court No. 3, Dallas County, Texas
Trial Court Cause No. PR 17-04085-3.
Opinion delivered by Justice Smith. Justices Pedersen, III and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the portion of the judgment awarding:

$20,000 for representation through the appeal to the court of appeals;

$5,000 for representation at the petition for review stage to the Texas Supreme Court;

$15,000 for representation at the merits briefing stage in the Texas Supreme Court; and

$15,000 for oral argument and the completion of proceedings at the Texas Supreme Court.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear their own costs of this appeal.

Judgment entered this 20th day of December 2021.