**AFFIRM; Opinion Filed November 29, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00185-CV

### HENRY MUNOZ AND MARITZA MUNOZ, Appellants
### V.
### NORMA OVALLE, Appellee[1]

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-03631**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Carlyle, and Justice Kennedy
Opinion by Justice Kennedy

Norma Ovalle filed her original petition for divorce from Henry Munoz.

Ovalle later amended her petition to assert claims against Henry's adult daughter

Maritza Munoz related to certain real property Henry deeded to Maritza,[2] which

Ovalle claimed was community property. Maritza filed a counterpetition, in which

she asserted several claims against Ovalle and sought a declaration that certain real

---

[1] Although previous orders and opinions in this case titled the appeal as *In the Interest of D.M., A Minor Child*, at the date of final decree of divorce, the trial court found there were no minor children of the marriage and none were expected, such that the appeal is more appropriately titled as *Munoz v. Ovalle*.

[2] Because Henry Munoz and Maritza Munoz share a last name, we will refer to them by their first names for clarity in this opinion.

property belonged to Maritza. The case proceeded to a bench trial, and the trial court later signed a final decree of divorce. This appeal followed.

In two issues, Henry argues in rendering the final decree of divorce the trial court erred by finding (1) he and Ovalle were informally married in August 2005 and (2) that certain real properties were community properties rather than Henry's separate properties. Maritza raises three issues. First, she contends the trial court abused its discretion by denying her and Henry's sworn motion to extend post-judgment deadlines. Second, Maritza urges the trial court committed harmful error by failing to file findings of fact and conclusions of law. Third, she asserts the trial court committed reversible error by voiding the deed from Henry to herself, challenging the legal and factual sufficiency of the evidence to support the implied findings made to reach that decision.

We affirm the trial court's final decree of divorce. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

### FACTUAL AND PROCEDURAL BACKGROUND

Ovalle and Henry met at the end of 2003 and began dating in 2004. In early August 2005, the couple travelled to Mexico where they agreed to be married. Upon return from their trip, they began cohabitating together at a residence in Plano, Texas (Plano Property), with Ovalle's then-minor daughter D.M. and two of Henry's children. In December 2005, Henry purchased a lot at 151 Alexander Lane, Royce

–2–

City, Texas (Royce City Property), and built a home there, and the couple moved into that home with D.M. in 2006. They later refinanced the Royce City Property in 2011 in both of their names. In October 2007, Henry purchased a house at 11278 Ashwood Drive, Dallas, Texas (Ashwood Property), which was located near Ovalle's parents' house. The couple managed that property as a rental property. In July 2008, the couple applied for a marriage license and held a marriage ceremony on July 12.

In January 2019, Henry was arrested and charged with sexually assaulting D.M., and the couple separated. On February 22, Ovalle filed an original petition for divorce from Henry. In May, Ovalle filed her first amended petition, changing the date of marriage from July 12, 2008, to August 2005 and adding claims against Henry and Maritza in connection with the transfer of ownership of the Ashwood Property to Maritza. In May, Maritza filed a counterpetition, asserting claims against Ovalle and seeking declarations that the Ashwood Property was not part of the marital estate, is the property of Maritza as of the deed transfer date of February 18, 2019, and that all rental income and moneys due in connection with the Ashwood Property were owed to Maritza. Subsequently, Ovalle non-suited her claims against Maritza.

The case proceeded to trial before the court, which was held virtually through Zoom conferencing, on August 26, 2020. At that trial, the court heard testimony from Ovalle, Maritza, Ovalle's two sisters, and Ovalle's friend and co-worker, and

–3–

from Maritza's attorney on the issue of Maritza's attorney's fees.[3] At the conclusion of the trial, the court issued several oral rulings and findings, including that Henry and Ovalle were informally married in August 2005, the deed of the Ashwood Property from Henry to Maritza was void, and denying Ovalle's and Maritza's respective requests for attorney's fees. On December 15, 2020, the trial court signed the final decree of divorce, which included the earlier oral findings and rulings.

On January 14, 2021, Henry filed a motion for new trial. On January 19, Henry and Maritza filed a joint amended motion for new trial. The motion for new trial was denied by operation of law.

On January 29, Henry and Maritza filed a joint sworn motion to extend post-judgment deadlines pursuant to Rule 306a of the Texas Rules of Civil Procedure. On February 1, Henry and Maritza requested findings of fact and conclusions of law. On February 9, the trial court held a hearing on the motion to extend post-judgment deadlines, at the conclusion of which the court denied the motion. On February 23, Henry and Maritza filed their notice of past due findings of fact and conclusions of law. On March 11, the trial court signed an order denying Henry and Maritza's motion to extend post-judgment deadlines. The trial court did not sign any findings

---

[3] In February 2020, Henry was convicted of sexually assaulting D.M. and was sentenced to twelve years' imprisonment. He did not appear at trial in person, virtually, or telephonically.

of fact or conclusions of law in response to Henry and Maritza's requests. On March 25, 2021, Henry and Maritza filed their notice of appeal.[4]

## DISCUSSION OF HENRY'S ISSUES

## I. Henry and Ovalle Were Informally Married in 2005

In his first issue, Henry challenges the legal and factual sufficiency of the evidence to support the finding that he and Ovalle were informally married in August 2005, urging that he and Ovalle only agreed to be married at a future date, did not cohabitate as husband and wife until after the 2008 ceremony, and that they did not represent to others that they were married.

When a case is tried to the court, as here, we review the trial court's findings of fact in the same manner as a jury's answers to jury questions. *In re J.G.S.*, No. 05-18-00452-CV, 2019 WL 336543, at *2 (Tex. App.—Dallas Jan. 28, 2019, no pet.) (mem. op.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *In re Estate of Walker*, No. 02-08-00371-CV, 2009 WL 1996301, at *2 (Tex. App.—Fort Worth July 9, 2009, no pet.) (mem. op.)). In reviewing the factual sufficiency of the evidence, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See In re A.D.J.*, No. 05-17-01437-CV, 2019 WL

---

[4] A panel of this Court dismissed the appeal for lack of jurisdiction after denying appellants' motion for extension of time to file their notice of appeal. Subsequently, we vacated that opinion, reinstated the appeal, and granted the motion for extension of time. *See In re D.M.*, 643 S.W.3d 758 (Tex. App.—Dallas 2022, no pet.). This appeal was later submitted with oral argument on October 11, 2023.

1467962, at *5 (Tex. App.—Dallas Apr. 3, 2019, no pet.) (mem. op.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *See id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We must credit the favorable evidence if a reasonable factfinder could and disregard the contrary evidence unless a reasonable factfinder could not. *See id.* (citing *City of Keller*, 168 S.W.3d at 827). In a bench trial, the trial court is the factfinder and the sole judge of the witnesses' credibility and the weight to be given their testimony. *See In re N.A. F.*, No. 05-17-00470-CV, 2019 WL 516715, at *5 (Tex. App.—Dallas Feb. 11, 2019, no pet.) (mem. op.).

An informal marriage may be proven by evidence the couple agreed to be married and, after the agreement, they lived together in this state as spouses and represented to others in this state that they were married. *See* TEX. FAM. CODE § 2.401(a). An agreement to be informally married may be established by direct or circumstantial evidence. *See id.* § 2.401(a)(2); *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Evidence of cohabitation and holding out the other party as one's spouse may constitute some evidence of an agreement to be married depending on the facts of the case. *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied). Because in modern society it is difficult to infer an agreement to be married from cohabitation, evidence of "holding out" must be particularly convincing to be probative of such an agreement. *Id.* Holding out requires more

–6–

than occasional references to each other as "wife" or "husband." *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.). A couple's reputation in the community as being married is a significant factor in determining the holding out element. *Id.*

Here, Henry does not dispute that he agreed to be married to Ovalle, but he argues that they both agreed in August 2005 to be married at a future date and did not do so until the formal ceremony was performed in 2008. The record contains the following evidence regarding the parties' agreement to be informally married and whether they lived together as husband and wife or were merely engaged to be married until the formal ceremony in July 2008. Ovalle testified she considered herself to be married to Henry on August 15, 2005, and that about a week after their trip to Mexico, she and Henry moved in together at the Plano Property. She also testified that in 2005 Henry and she told her daughter D.M. and Henry's children from previous relationships, as well as other family members and members of their church, that they were married. Ovalle attested that on her birthday in September 2005, Henry purchased a ring for her that she wore on her wedding finger. In addition, Ovalle indicated that Henry then asked her if she wanted a house or a wedding ceremony, and she chose a house, which led to the purchase of the Royce City Property.

On cross-examination, Ovalle acknowledged that she responded to certain discovery requests with the statement that she and Henry "both agreed to a delayed

marriage." On redirect examination, Ovalle said that what she meant by "delayed marriage" was that they did not have a ceremony right away because they did not have the funds to pay for a celebration that would include all of their guests.

Henry argues that the foregoing evidence establishes that he and Ovalle agreed in 2005 to be married in the future, specifically July 2008, when they applied for a marriage license and participated in a ceremony. We conclude, however, that, viewed in the light most favorable to the trial court's finding and indulging every reasonable inference that would support it, the record contains legally sufficient evidence to support the trial court's findings that Henry and Ovalle agreed to be married in 2005 and thereafter lived together as spouses. *See* FAM. § 2.401(a)(2); *In re A.D.J.*, 2019 WL 1467962, at \*5 (citing *City of Keller*, 168 S.W.3d at 822). Further, we conclude the finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See In re A.D.J.*, 2019 WL 1467962, at \*5 (citing *Cain*, 709 S.W.2d at 176).

Having concluded the evidence of the first two elements of informal marriage to be legally and factually sufficient, we now address the sufficiency of the evidence to establish Henry and Ovalle holding themselves out as husband and wife in their community. Arlene Benitez testified she was Ovalle's friend and coworker, that she had met the couple in 2004 and that both Henry and Ovalle told her in 2005 that they were married to each other. Benitez testified she heard them refer to each other as husband and wife "[o]ver a hundred times" at parties and when Henry visited Ovalle

–8–

at the office. Alma Robles and Elizabeth Morales testified separately that they were Ovalle's sisters. Robles testified she became aware that Henry and Ovalle were married when she helped them move in together in August 2005 after returning from their trip to Mexico. According to Robles, she attended the ceremony in 2008 as a bridesmaid and understood the ceremony was "just to . . . make it legal." Morales offered similar testimony that when Henry and Ovalle moved in together in 2005, they began referring to each other as husband and wife. Ovalle testified that in 2005 Henry and she told her daughter D.M. and Henry's children from previous relationships, as well as other family members and members of their church, that they were married. Ovalle also testified that when they moved to Royce City, they began going to a new church where they introduced themselves as husband and wife.

Maritza testified she attended the ceremony in 2008 and did not believe Henry was married to Ovalle prior to same. According to Maritza, she never heard Henry refer to Ovalle as his wife. As the factfinder, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony and thus could have found credible those who testified that Henry and Ovalle held themselves out as spouses between August 2005 and July 2008. *See In re N.A. F.*, 2019 WL 516715, at *5.

The record also contains evidence that Ovalle filed several income tax forms as "head of household" rather than "married" or "married filing jointly" and that Ovalle indicated on the application for a marriage license in 2008 that she was not

–9–

married at that time. Henry relies on the tax forms and application for marriage license that Ovalle signed to argue the insufficiency of the evidence to support a finding that they held themselves out as spouses. In support of his argument, he relies on cases from other appellate courts that concluded evidence that a putative spouse's filing federal income tax returns as "single" weighed against finding of the holding out element of informal marriage. *See Small v. McMaster*, 352 S.W.3d 280, 286 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Winfield v. Renfro*, 821 S.W.2d 640, 650 (Tex. App.—Houston [1st Dist.] 1991).

We conclude these cases are factually distinguishable as in each case there was much more evidence to weigh against a finding of holding out than exists on the record here. *See Small*, 352 S.W.3d at 286 (putative wife admitted that putative husband wanted to "conceal the fact of his marriage," failed to represent she was married in insurance dispute, was aware of putative husband's later marriage to another woman but failed to challenge the legitimacy of that marriage); *Winfield*, 821 S.W.2d at 650 (noting that even by putative wife's testimony, marriage was "largely a secret marriage" only known to few relatives and acquaintances of putative wife). Further, even in *Winfield*, the court noted that had the record in that case been replete with other evidence that showed an informal marriage, the evidence of the tax return and insurance application would be less significant. *See Winfield*, 821 S.W.2d at 650; *see also Malik v. Bhargava*, No. 05-13-00384-CV, 2014 WL 1022358, at *1 (Tex. App.—Dallas Feb. 19, 2014, no pet.) (mem. op.)

–10–

(noting evidence in record indicated "no dispute" putative spouses represented to others that they were married despite some evidence that putative spouses filed separate federal income tax returns indicating they were both "single").[5]

We conclude, that, viewed in the light most favorable to the trial court's finding and indulging every reasonable inference that would support it, the record contains legally sufficient evidence to support the trial court's findings that Henry and Ovalle held themselves out to their community as spouses. *See* FAM. § 2.401(a)(2); *In re A.D.J.*, 2019 WL 1467962, at \*5 (citing *City of Keller*, 168 S.W.3d at 822). Further, we conclude the finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See In re A.D.J.*, 2019 WL 1467962, at \*5 (citing *Cain*, 709 S.W.2d at 176).

We overrule Henry's first issue.

## II. Based on Finding of Informal Marriage, Certain Real Properties Were Community Properties

In his second issue, Henry contends the trial court abused its discretion when it found that the Royce City and Ashwood Properties were community property and not his separate property. Henry further urges he acquired the properties in 2006 and 2007, before the marriage date of July 12, 2008. Accordingly, he asserts that

---

[5] The only tax return admitted into evidence was one for Ovalle, which was dated 2014, several years after the 2008 ceremony. Ovalle testified that she had helped prepare Henry's tax returns and that "none of his tax returns—since [she] met him—have indicated 'married, filing jointly' or otherwise." Accordingly, the trial court could reasonably infer that neither Ovalle nor Henry filed as "married" before or after the 2008 ceremony.

the trial court's findings harmed him and divested him of his sole and separate property.

When reviewing an alleged property characterization error, we must determine whether the trial court's finding is supported by clear and convincing evidence and whether the characterization error, if established, was an abuse of discretion. *Sink v. Sink*, 364 S.W.3d 340, 343 (Tex. App.—Dallas 2012, no pet.) (citing *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied)). In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *See id.* (citing *Chavez v. Chavez*, 269 S.W.3d 763, 766 (Tex. App.—Dallas 2008, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)).

The characterization of property as community or separate is determined by the inception of title to the property, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested. *See Sink*, 364 S.W.3d at 344 (citing FAM. § 3.404(a); *Chavez*, 269 S.W.3d at 767; *Boyd*, 131 S.W.3d at 612). A spouse's separate property consists of (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. *See*

–12–

FAM. § 3.001. Community property consists of the property, other than separate property, acquired by either spouse during marriage. *See id.* § 3.002.

The Family Code provides that "[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." FAM. § 3.003(a). Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam) (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)). To do so, the party must trace and clearly identify the property in question as separate by clear and convincing evidence. *See id.* (citing FAM. § 3.003(b)).

The record contains testimony that Henry purchased the Ashwood Property in October 2007, as well as some evidence that he purchased the Royce City Property in July 2006. Thus, the record reflects, and Henry does not dispute, both properties were acquired by him after August 2005. We have already overruled Henry's issue challenging the trial court's finding that Henry and Ovalle were informally married in August 2005. Therefore, the trial court could have found the properties were acquired during the marriage. Henry does not cite, and we have not found, any evidence to support a finding that either property was acquired by gift, devise, or descent. Accordingly, we cannot conclude the trial court abused its discretion by concluding the Royce City and Ashwood Properties were community property.

We overrule Henry's second issue.

## I.   No Reversible Error from Trial Court's Failure to File Findings of Fact and Conclusions of Law

In her first issue, Maritza argues the trial court abused its discretion by denying her and Henry's joint sworn motion to extend post-judgment deadlines pursuant to Rule 306a of the Texas Rules of Civil Procedure. Rule 306a governs the periods to run from the signing of a judgment, including requests for findings of fact and conclusions of law. *See* TEX. R. CIV. P. 306a. Rule 306a also provides for extension of post-judgment deadlines on a showing that neither a party adversely affected by the judgment nor his attorney has received notice or acquired actual notice of the order. *See id.* Even assuming, without deciding, the trial court erred by denying this motion, such error would not be reversible unless it probably caused the rendition of an improper judgment or probably prevented Maritza from properly presenting the case to our Court. *See* TEX. R. APP. P. 44.1(a).

In her second issue, Maritza argues the trial court committed harmful error by failing to file requested findings of fact and conclusions of law. Requests for findings of fact and conclusions of law are governed by Rule 296 of the Texas Rules of Civil Procedure and "shall be filed within twenty days" after the judgment is signed. *See* TEX. R. CIV. P. 296.[6] On December 15, 2020, the trial court signed the

---

[6] The legislature has recently amended this rule, effective September 8, 2023, which is well after the trial court signed the final decree of divorce. Accordingly, all discussion and references to this rule apply to the prior version of the rule.

final decree of divorce, such that any requests for findings of fact and conclusions of law were due on January 4, 2021. *See id.* In the motion to extend post-judgment deadlines, Henry and Maritza urged neither they nor their respective trial counsel had received actual notice of the final decree of divorce until January 15, 2021, and thus requested a hearing in order to prove that delayed notice. *See* TEX. R. CIV. P. 306a. Henry and Maritza then filed their request for findings of fact and conclusions of law on February 1, 2023, which was forty-eight days after the trial court signed the final decree of divorce and eighteen days after Henry and Maritza alleged they received actual notice of the final decree of divorce. Thus, urges Maritza, the request would have been timely. *See* TEX. R. CIV. P. 296. Accordingly, a conclusion that Maritza was harmed by the trial court's error alleged in her first issue—failure to extend post-judgment deadlines—depends upon a conclusion that she was harmed by the trial court's error alleged in her second issue—failure to file findings of fact and conclusions of law.

A trial court's failure to file findings in response to a timely and proper request is thus "presumed harmful, unless 'the record before the appellate court affirmatively shows that the complaining party has suffered no injury.'" *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (quoting *Wagner v. Riske*, 178 S.W.2d 117, 120 (Tex. 1944)) (citing *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)). The general rule is that an appellant has been harmed if, under the circumstances of the case, he or she has to guess at the reasons the trial court ruled

–15–

against him. *See Clark v. Litchenburg*, No. 05-18-00278-CV, 2019 WL 4010771, at *7 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.) (citing *In re C.M.C.*, No. 05-15-01359-CV, 2016 WL 7166415, at *7 (Tex. App.—Dallas Nov. 9, 2016, no pet.) (mem. op.)).

Maritza urges that she was harmed by the court's failure to make findings and conclusions, arguing that the facts in this case are complicated and disputed and that she could not know from the final decree of divorce the basis of the trial court's order voiding her deed of the Ashwood Property from Henry. Maritza contends she had to guess the reasons for the trial court's ruling and that the burden of rebutting every presumed finding is so burdensome that it effectively prevents Maritza from properly presenting her case.

As previously discussed, Ovalle asserted claims against Maritza related to the Ashwood Property and Henry's deed of same to Maritza, but then she later nonsuited those claims. The only claims regarding the Ashwood Property at the time of trial were Maritza's counterclaims and Ovalle's claims against Henry for breach of fiduciary duty, fraudulent transfer of community property, and waste of community assets. The final decree of divorce included a section titled "Final Judgment as to Maritza Munoz's claims," in which the trial court found in favor of Ovalle on all Maritza's claims against her, ordering that Maritza take nothing against Ovalle. The decree also ordered that the deed Henry signed transferring the Ashwood Property to Maritza as void. The only basis for which the trial court could void the deed

–16–

required a finding that the Ashwood Property was community property that was improperly transferred from Henry to Maritza.

During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in that spouse's possession and is not subject to such evidence of ownership. *See* FAM. § 3.104(a) (titled "Protection of Third Parties"). A third party dealing with a spouse is entitled to rely, as against the other spouse or anyone claiming from that spouse, on that spouse's authority to deal with the property if: (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and (2) the person dealing with the spouse: (A) is not a party to a fraud on the other spouse or another person; and (B) does not have actual or constructive notice of the spouse's lack of authority. *Id.* § 3.104(b).

The evidence of ownership of the Ashwood Property largely consists of Ovalle's testimony. Although she initially testified "we purchased" the Ashwood Property, Ovalle later stated that she did not purchase it, Henry did. The record also contains Ovalle's admissions to Henry's requests for discovery, including admissions that she did not purchase the Ashwood Property. From this evidence, the trial court therefore could have presumed that the Ashwood Property was subject to the sole management, control, and disposition of Henry.

–17–

In order to establish she was entitled to rely on Henry's authority to deal with the Ashwood Property, Maritza must have stablished (A) she was not a party to a fraud on Ovalle and (B) that she did not have actual or constructive notice of Henry's lack of authority. *See* FAM. § 3.104(b)(2). Therefore, the only presumed or implied findings Maritza would have to rebut on appeal were that she was a party to fraud on Ovalle and that she had actual or constructive notice of Henry's lack of authority.[7] *See id.*; *see also Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied) (when only single ground of recovery or single defense, appellant does not usually have to guess at reasons for trial court's judgment). Accordingly, even assuming, without deciding, that the trial court erred by denying the motion to extend post-judgment deadlines, we cannot conclude Maritza was harmed by the trial court's failure to file findings of fact and conclusions of law.

We overrule Maritza's first two issues.

## II. Trial Court Did Not Err by Voiding Deed from Henry to Maritza

In her third issue, Maritza urges the trial court erred by voiding the deed transferring the Ashwood Property from Henry to Maritza. She challenges the sufficiency of the record to support the trial court's implied findings to support voiding the deed.

---

[7] As discussed *infra*, in her third issue, Maritza challenges the sufficiency of the evidence to support such implied findings.

Where, as here, the trial court does not issue findings of fact and conclusions of law, all fact findings necessary to support the trial court's judgment and supported by the evidence are implied. *Cadle Co. v. Parks*, 228 S.W.3d 915, 916 (Tex. App.— Dallas 2007, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). When the appellate record includes a reporter's record, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency under the same standards that apply to jury and trial court findings. *Id.* (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)).

In reviewing the factual sufficiency of the evidence, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See In re A.D.J.*, No. 05-17-01437-CV, 2019 WL 1467962, at *5 (Tex. App.—Dallas Apr. 3, 2019, no pet.) (mem. op.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *See id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We must credit the favorable evidence if a reasonable factfinder could and disregard the contrary evidence unless a reasonable factfinder could not. *See id.* (citing *City of Keller*, 168 S.W.3d at 827). In a bench trial, the trial court is the factfinder and the sole judge of the witnesses' credibility and the weight to be given their testimony.

*See In re N.A. F.*, No. 05-17-00470-CV, 2019 WL 516715, at *5 (Tex. App.—Dallas Feb. 11, 2019, no pet.) (mem. op.).

Maritza argues the evidence in the record establishes she believed the Ashwood Property was Henry's separate property before his marriage to Ovalle. She further urges that her admitted awareness of the fact that Henry was married when he deeded the Ashwood Property to her is insufficient to establish she had actual or constructive notice of Henry's lack of authority.

Ovalle responds that the evidence showed that she and Henry jointly managed and controlled the Ashwood Property and that Maritza had actual or constructive notice of Henry's lack of authority. Ovalle testified that on February 13, 2019, Maritza texted Ovalle to say that she needed Ovalle to sign a document to put the Ashwood Property into a limited liability company to protect against liability from renters. A copy of that text exchange was admitted into evidence, which showed Maritza knew Ovalle had an interest in the property such that it could not be placed into an LLC without her consent. In those messages, Ovalle questioned why the Ashwood Property needed to be in an LLC when the renter at the time was moving out. Maritza responded, "It can still be used as a rental property." In her testimony, Maritza denied planning with Henry to take away any properties from Ovalle. She admitted that when she met Henry's attorney at the jail where Henry was

–20–

incarcerated, at which time Henry executed several documents,[8] she did not bring

Ovalle or anyone else with her. When questioned about that text exchange, Maritza

recalled texting Ovalle about placing the Ashwood Property into an LLC, but said

she could not recall discussing continuing to rent out the property. Maritza also

admitted to sending Ovalle the bills related to that and other properties, which

likewise showed she recognized Ovalle's involvement in same.

We conclude the foregoing is legally and factually sufficient evidence that

Maritza had constructive notice that Henry lacked sole authority to transfer the

Ashwood Property. We agree that simply knowing a person is married is, without

more, insufficient to prove notice. *See Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex.

App.—Houston [14th Dist.] 2003, pet. denied); *see also Lemaster v. Top Level*

*Printing Ink, Inc.*, 136 S.W.3d 745, 748 (Tex. App.—Dallas 2004, no pet.) (holding

as insufficient notice evidence stock purchasers included signature lines for wives).

However, here, there is evidence that Maritza accepted the deed of transfer only after

first seeking Ovalle's signature to transfer ownership of the Ashwood Property to an

LLC. *See, e.g.*, *Williams v. Portland State Bank*, 514 S.W.2d 124, 126 (Tex. App.—

Beaumont 1974, writ dism'd) (holding actual knowledge by Bank that former wife

---

[8] Ovalle testified that it was at this time that Henry signed the deed transferring the Ashwood Property to Maritza. Maritza denied that he signed the deed then, but conceded that at that time Henry executed documents giving Maritza power of attorney to act on his behalf while he was incarcerated. Ovalle testified Maritza used that power of attorney form to collect rent from the Ashwood Property after first texting Ovalle about transferring the property into a limited liability company. Ovalle also testified Henry never told her about any power of attorney documents.

–21–

had refused to sign first note and deed of trust was sufficient as a matter of law to put Bank on 'notice' to make further inquiry as to extent of former husband's authority to encumber former wife's interest in tract of land).[9]  Thus, the trial court could have concluded that Maritza had constructive notice that Henry lacked authority to transfer ownership of the Ashwood Property without Ovalle's consent.

We overrule Maritza's third issue.

## CONCLUSION

We affirm the trial court's December 15, 2020 final decree of divorce.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

210185F.P05

---

[9] Having concluded Maritza's challenge to the implied finding of notice failed, we need not address the sufficiency of the evidence to support any implied finding of whether Maritza was a party to a fraud on Ovalle.  *See* TEX. R. APP. P. 47.1; FAM. § 3.104(b)(2).



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

HENRY AND MARITZA MUNOZ,
Appellant

No. 05-21-00185-CV     V.

NORMA OVALLE, Appellee

On Appeal from the 255th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-03631.
Opinion delivered by Justice
Kennedy. Chief Justice Burns and
Justice Carlyle participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the December 15, 2020 final decree of divorce.

It is **ORDERED** that appellee NORMA OVALLE recover her costs of this appeal from appellant HENRY AND MARITZA MUNOZ.

Judgment entered this 29th day of November 2023.